# BLANKROME

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

| | |
|---|---|
| *Phone:* | *(212) 885-5130* |
| *Fax:* | *(212) 885-5001* |
| *Email:* | *Martin.Krezalek@BlankRome.com* |

September 23, 2024

**VIA ECF FILING**

The Honorable John P. Cronan
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, NY 10007-1312

Re:     *Fernandez v. Buffalo Jackson Trading Co., LLC*, Case No. 1:24-cv-04878-JPC

Dear Judge Cronan,

We are counsel for Buffalo Jackson Trading Co., LLC and write, pursuant to Rule 6(A) of the Court's Individual Rules, to notify the Court of Buffalo Jackson's intent to move to dismiss the September 9, 2024 First Amended Complaint ("FAC") pursuant to Fed R. Civ. P. 12(b)(1).

This case is one of many identical cases filed by Stein Saks on behalf of various serial plaintiffs targeting businesses for operating websites that are allegedly inaccessible to the blind and visually impaired in violation of Title III of the American Disabilities Act, 42 U.S.C. § 12181, et. seq. ("ADA"). The website at issue in this case is https://buffalojackson.com/  (the "Website"). In its contemplated motion, Buffalo Jackson will demonstrate that the boilerplate Complaint should be dismissed under Rule 12 (b)(1) for lack of subject matter jurisdiction.

For a plaintiff to have Article III standing, he must establish: (1) an injury in fact; (2) that a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy the injury in fact prong, the injury alleged must be "particularized," and "concrete." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). "Particularized" injuries "affect the plaintiff in a personal and individual way." *Id.*   Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. ——, ——, 141 S.Ct. 2190, 2206, 210 L.Ed.2d 568 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021)

Here, applying the standards in the Second Circuit's decisions in *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442–43 (2d Cir. 2022) and *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 72 (2d Cir. 2022), Plaintiff has no standing for prospective relief under the ADA. These cases make clear that a plaintiff has standing "only when he can show a current or past harm beyond the statutory violation itself," (*Harty*, 28 F.4th at 443), and the plaintiff must "plausibly allege[] 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75.

Honorable John C. Cronan
September 23, 2024
Page -2-

Plaintiff alleges that he "visited the Website multiple times, most recently on April 15, 2024 using a screen-reader." (FAC ¶ 41). He claims that he "was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from having an unimpeded shopping experience." (*Id*. ¶ 46). While he claims that the Website contains "access barriers [which] effectively denied Plaintiff the ability to use and enjoy [the] website the same way sighted individuals do. (*Id*. ¶ 47), Plaintiff does not plead any facts alleging any downstream consequences from having supposedly encountered any of these supposed issues. For example, Plaintiff claims that elements and links "do not follow the same order as the page layout," "the focus order does not move from trigger button to dialog items," and that "moving content on the home page has no mechanism to pause or stop the movement." (FAC ¶ 49-51). But Plaintiff fails to explain how these things prevented him from making a purchase. Plaintiff also copies and pastes a nonsensical paragraph (likely from some audit report), complaining that "labels do not indicate whether or not form fields are mandatory" (*Id*. ¶ 52), and similarly fails to explain how this caused him an injury. This is fatal to his Complaint. *Harty*, 28 F.4th at 444 (allegations that a website deprived plaintiff of the information required to make meaningful choices fails to state an injury because an ADA plaintiff "must also allege downstream consequences from failing to receive the required information" in order to have an Article III injury in fact") *see also Laufer v. Dove Hess Holdings, LLC*, No. 20-CV-379, 2020 WL 7974268, at *11 (N.D.N.Y. Nov. 18, 2020) ("[W]here a tester plaintiff discovers and is offended by ADA violations on a website, but that website has no actual, specific relevance to that particular plaintiff beyond the plaintiff's desire to seek out and remedy ADA violations, no concrete and particularized injury has been alleged.").

Moreover, a plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that "she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Such "threatened injury must be certainly impending to constitute injury in fact, and ... allegations of possible future injury are not sufficient." *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015). Here, even after amending his Complaint to manufacture details (redline attached hereto), Plaintiff's pleading of his intent to return is implausible. Plaintiff still does not allege that he regularly visited or shopped at the Website. Indeed, Plaintiff's sole purported visit occurred just two months before he filed this lawsuit—along with 4 other identical lawsuits filed on the same day. Such allegations are inherently insufficient to establish a genuine intent to return. *See. e.g.*, *Martin v. Second Story Promotions, Inc.*, No. 1:22-CV-10438 (MKV), 2024 WL 775140, at *3 (S.D.N.Y. Feb. 26, 2024) ("The broader context in which Plaintiffs have prosecuted this action—and others—further undermines their assertions of claimed injury in fact . . ."); *Fontanez v. Valley Lahvosh Baking Co.*, Inc., No. 1:22-CV-5537 (MKV), 2023 WL 5390212, at *3 (S.D.N.Y. Aug. 22, 2023) (serial plaintiff who claimed to have visited the website only twice in a short period before filing the action failed to plausibly allege an intent to return); *Toro v. Gen. Store, LLC*, No. 1:22-CV-6130 (MKV), 2023 WL 4624690, at *3 (S.D.N.Y. July 19, 2023) (allegations of two visits shortly before the filing of the lawsuit "raise[d] serious questions with respect to the plausibility that Plaintiff suffered injury as opposed to manufacturing a claim."); *Winegard v. Golftec Intell. Prop. LLC*,  No. 23-CV-1244 (BMC), 2023 WL 3672540, at *3 (E.D.N.Y. May 26, 2023) (plaintiff who never claimed to have patronized defendants' golf centers and

Honorable John C. Cronan
September 23, 2024
Page -3-

only visited defendants' website immediately prior to filing his lawsuit failed to plausibly allege an intent to return).

Plaintiff amends his conclusory "intent" allegation to now say that he "intends to visit the Website in the near future if it is made accessible _for all the reasons stated previously_." (FAC ¶ 54). But even these new manufactured allegations (_e.g._, regarding the Websites' styles and options, etc.) are implausible when viewed in the larger context of Plaintiff's and his counsel's pleading habits. Plaintiff's fill-in-the-blank contentions—_repeated verbatim across every other one of his complaints_—cannot be credited.[1] _Calcano_ and its progeny make clear that such "conclusory allegations of intent to return . . . are not enough . . ." _Calcano_, 36 F.4th at 72. To survive dismissal, the complaint must include factual allegations that render plausible the assertion that the plaintiff intends to immediately return to the website to make a purchase. _See_, _e.g._, _Golftec_, 2023 WL 3672540, at *5 (standing requires more than parroting the legal standard); _Gen. Store, LLC_, 2023 WL 4624690, at *3 ("…[a] conclusory allegation of an intent to return (without more) is merely a legal conclusion couched as a factual allegation, and is thus insufficient to demonstrate an intent to return"); _Moo Organic Chocolates_, LLC, No. 21-CV-9816 (VEC), 2022 WL 17094631, at *3 (S.D.N.Y. Nov. 21, 2022) (granting jurisdictional discovery because court was skeptical of plaintiff's "not...particularly plausible" allegations of his desire to purchase chocolates from this particular seller); _Bunting v. Ogee, Inc._, Case No. 1:21-cv-909-LDH (E.D.N.Y. Sept. 23, 2022) (dismissing complaint where plaintiff made "no allegations concerning regular use of the Website"); _Zinnamon v. Satya Jewelry II LLC_, Case No. 1:23-cv-781-VEC, 2023 U.S. Dist. LEXIS 74479, at *2 (S.D.N.Y. April 28, 2023) (allegation that plaintiff "intends to visit the Website in the near future if it is made accessible" was implausible and insufficient to allege standing under _Calcano_). The kind of "transparent cut-and-paste and fill-in-the-blank pleadings" used to commence website accessibility cases like this one are not enough to plausibly state an injury. _Calcano_ 36 F.4th at 77 ("This backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury.").

Buffalo Jackson looks forward to brief the above issues to the Court, and proposes the following schedule: Motion: October 18; Opposition: November 15; Reply: November 22. In its motion, Buffalo Jackson will also respectfully request that discovery is stayed pending the resolution of the motion insofar as Buffalo Jackson will simultaneously move for limited jurisdictional discovery and an evidentiary hearing on the above-discussed jurisdictional issue.

Respectfully submitted,

_/s/ Martin S. Krezalek_

---

[1] Buffalo Jackson will expose Plaintiff's disingenuous pleading tactics in its motion to dismiss the FAC. In particular, Buffalo Jackson will demonstrate how the "intent to return" allegations, even as amended, do not reflect the genuine intentions of a bona fide consumer, and instead amount to an attempt to avoid dismissal by pleading the magic language.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE FERNANDEZ, on behalf of himself and : all others similarly situated,<br><br>Plaintiffs,<br><br>v<br><br>BUFFALO JACKSON TRADING CO., LLC,<br><br>Defendant. | Case No.: 24-4878<br><br>FIRST AMENDED CLASS ACTION COMPLAINT COMPLAINT AND DEMAND FOR JURY TRIAL |

INTRODUCTION

1.    Plaintiff FELIPE FERNANDEZ ("Plaintiff") on behalf of himself and others similarly situated, asserts the following claims against Defendant BUFFALO JACKSON TRADING CO., LLC, ("Defendant") as follows.

2.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. Plaintiff uses the terms "blind" or "visually-impaired" as Plaintiff's central visual acuity with correction is less than or equal to 20/200.

3.    Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired[1], including 2.0 million who are blind. According a 2016 report published by the National Federation of the Blind, 2016 report, approximately 418,500 visually impaired persons live in the State of New York.[2]

4.    Plaintiff brings this civil rights action against Defendant for the failure to design, construct, maintain, and operate Defendant's website, www.buffalojackson.com (the "Website"),

---

[1]*See* United States Census Bureau Report.

[2]*See* 2016 Report – National Federation for the Blind.

to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, and therefore denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

6.      Defendant's website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

<u>JURISDICTION AND VENUE</u>

7.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL")claims.

9.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this Judicial District.

10.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Westchester County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

11.     The United States Department of Justice Civil Rights Division has recently issued that "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."[3]

12.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>THE PARTIES</u>

---

[3]*See* Guidance on Web Accessibility and the ADA.

13.    Plaintiff FELIPE FERNANDEZ, at all relevant times, is and was a resident of Westchester County, New York.

14.    Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYSHRL.

15.    Upon information and belief, Defendant is, and at all relevant times was, doing business in this jurisdiction.

16.    Defendant's Website, and the goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j).

<u>STANDING</u>

17.    Plaintiff FELIPE FERNANDEZ is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYSHRL.

18.    Consumers such as the Plaintiff may purchase Defendant's products and access other brand related content and services at the Website Defendant owns, operates, and controls.

19.    In addition to researching and purchasing Defendant's products and services, consumers may also use Defendant's Website to sign up to receive product updates, product news, and receive special promotions not available elsewhere.

20.    Plaintiff was injured when Plaintiff attempted multiple times, most recently on April 15, 2024 to access Defendant's Website from Plaintiff's home in an effort to shop for Defendant's products, but encountered barriers that denied the full and equal access to Defendant's online goods, content, and services.

21.    Specifically, Plaintiff wanted to purchase the Thompson leather moto jacket.

22.    Plaintiff's desire for this product was due to the fact that he was looking for a robust and stylish leather jacket that would offer both comfort and a classic aesthetic. He sought a high quality leather universal jacket for casual wear and which would suit any look.

23.    Plaintiff came across Defendant's Website via "Google" search. This Website holds themselves out as an online store renowned for its high-quality leather goods and rugged outdoor apparel. They offer a variety of products including leather jackets, bags, wallets, and accessories that combine classic craftsmanship with durable materials designed for both casual and adventurous lifestyles. The Website also offers ten percent off a first purchase. Therefore, Plaintiff desired to buy products from the Website.

24.    Additionally, the Website also offers the most styles and purchase options of the products the Defendant creates and sells, therefore, Plaintiff desired to buy products from the Website.

2425.    Unfortunately, Plaintiff was unable to complete the purchase due to the inaccessibility of Defendant's Website.

2526.    Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the Thompson leather moto jacket that Plaintiff wished to acquire from the Website.

2627.    The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers.

2728.   Plaintiff has been, and in absence of an injunction, will continue to be injured by Defendant's failure to provide the online content and services in a manner that is compatible with screen-reader technology.

2829.   Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the Thompson leather moto jacket, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

30.    Plaintiff is highly selective about the product he wished to purchase when considering such a high-quality leather product.

2931.   Despite thisthe direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically to purchase the Thompson leather moto jacket, if remedied.

NATURE OF ACTION

3032.   The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

3133.   In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-readingScreenreading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless websites are designed to be read by

~~screen-reading~~ screenreading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and goods contained thereon.

~~32~~34.   Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer. Another popular screen-reading software program available for a Windows computer is NonVisual Desktop Access "NVDA".

~~33~~35.   For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

~~34~~36.   The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

~~35~~37.   Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

　　　　a.　　A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and <u>navigation;</u>

<s>navigation;</s>

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.    Web pages do not have titles that describe the topic or purpose;

i.    The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.    One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.    The default human language of each web page cannot be programmatically determined;

l.    When a component receives focus, it may initiate a change in context;

m.    Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDF); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

36 38.  Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STATEMENT OF FACTS

3739.  Defendant is a company that owns and operates the Website, offering features which should allow all consumers to access the goods and services and by which Defendant ensures the delivery of such goods throughout the United States, including New York State.

3840.  Defendant's Website offers products and services for online sale and general delivery to the public. The Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about pricing, and avail consumers of the ability to peruse the numerous items offered for sale.

3941.  Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. Plaintiff has visited the Website multiple times, most recently on April 15, 2024 using a screen-reader.

4042.  Specifically, Plaintiff wanted to purchase the Thompson leather moto jacket.

4143.  Plaintiff's desire for this product was due to the fact that he was looking for a robust and stylish leather jacket that would offer both comfort and a classic aesthetic. He sought a universal jacket for casual wear and which would suit any look

4244.  Plaintiff came across Defendant's Website via "Google" search. This Website holds themselves out as an online store renowned for its high-quality leather goods and rugged outdoor apparel. They offer a variety of products including leather jackets, bags, wallets, and accessories that combine classic craftsmanship with durable materials designed for both casual and adventurous lifestyles. The Website also offers ten percent off a first purchase. Therefore, Plaintiff desired to buy products from the Website.

45.    Additionally, the Website also offers the most styles and purchase options of the products the Defendant creates and sells, therefore, Plaintiff desired to buy products from the Website.

4346.    On April 15, 2024, Plaintiff visited Defendant's website to purchase the Thompson leather moto jacket. Despite Plaintiff's efforts, however, Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from having an unimpeded shopping experience.

4447.    The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen-reading software. These barriers include but are not limited to: missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse.

4548.    The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

49.    Specifically, on the Plaintiff's desired product page, when tabbing through active elements and links, they do not follow the same order as the page layout: left to right and top to bottom.

50.    Additionally, when Plaintiff attempted to add the item to the cart, he opened a dialog, and the focus order does not move from trigger button to dialog items. Assistive technology users should not be confused when they navigate through content, rather should

encounter information in an order that is consistent with the meaning of the content and can be operated from the keyboard.

51.    Further, moving content on the home page has no mechanism to pause or stop the movement. The mechanism should be provided to allow the user to read moving content in a static window/area. The mechanism must be accessible to the assistive technology and keyboard

52.    Finally, when attempting to pay the labels do not indicate whether or not form fields are mandatory ("Required"). One of the techniques is missing: • Text should indicate required field (this technique is preferable); • Asterisk should indicate required field (Important: the asterisk meaning should be defined at the start of the form).

4653.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do.

4754.    Plaintiff intends to visit the Website in the near future if it is made accessible for all the reasons stated previously.

4855.    Defendant has denied Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to the website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

4956.    Due to the inaccessibility of Defendant's Website, blind and visually- impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on the Website. The access

barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website.

~~50~~57. If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

~~51~~58. Through Plaintiff's attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

~~52~~59. Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

> a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;
>
> b.    Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,
>
> c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

~~53~~60. Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

~~54~~61. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

~~55~~62.  Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

  a.  Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

  b.  Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

  c.  Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and,

  d.  Develop an accessibility policy that is clearly disclosed on Defendant's Websites, with contact information for users to report accessibility-related problems.

~~56~~63.  Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

5764. Defendant has, upon information and belief, invested substantial sums in developing and maintaining the Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers.

5865. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

<u>CLASS ACTION ALLEGATIONS</u>

5966. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

6067. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York State subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

6168. Common questions of law and fact exist amongst the Class, including:

a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b.    Whether Defendant's Website is a "place of public accommodation" under the NYSHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people

with visual disabilities, violating the ADA; and d.    Whether    Defendant's
Website denies the full and equal enjoyment of the products, services, facilities,
privileges, advantages, or accommodations to people with visual disabilities,
violating the NYSHRL.

62 69.    Plaintiff's claims are typical of the Class. The Class, similarly to the Plaintiff, are
severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA or
NYSHRL by failing to update or remove access barriers on the Website so either can be
independently accessible to the Class.

63 70.    Plaintiff will fairly and adequately represent and protect the interests of the Class
Members because Plaintiff has retained and is represented by counsel competent and
experienced in complex class action litigation, and because Plaintiff has no interests antagonistic
to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P.
23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the
Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the
Class as a whole.

64 71.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3)
because fact and legal questions common to Class Members predominate over questions
affecting only individual Class Members, and because a class action is superior to other
available methods for the fair and efficient adjudication of this litigation.

65 72.    Judicial economy will be served by maintaining this lawsuit as a class action in
that it is likely to avoid the burden that would be otherwise placed upon the judicial system by
the filing of numerous similar suits by people with visual disabilities throughout the United
States.

<u>FIRST CAUSE OF ACTION</u>

<u>VIOLATIONS OF THE ADA, 42 U.S.C. § 12182 *et seq.*</u>

66<u>73</u>.   Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

67<u>74</u>.   Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

68<u>75</u>.   Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

69<u>76</u>.   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

70<u>77</u>.   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations,

which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

71<u>78</u>.   Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such

goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

~~72~~79.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

~~73~~80.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>

<u>VIOLATIONS OF THE NYSHRL</u>

<u>VIOLATION OF THE NEW YORK STATE CIVIL RIGHTS LAW</u>

~~74~~81.    Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

~~75~~82.    N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the

conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

76 83.    N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

77 84.    Defendant's Website is a service, privilege or advantage of Defendant and its Website which offers such goods and services to the general public is required to be equally accessible to all.

78 85.    Defendant is subject to New York Civil Rights Law because it owns and operates their Website, and Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

79 86.    Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to its Website, causing its Website and the goods and services integrated with such Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

80 87.    N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

~~81~~88.  Under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside ..."

~~82~~89.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

~~83~~90.  Defendant discriminates, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

~~84~~91.  Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines under N.Y. Civil Law § 40 *et seq*. for each and every offense.

<u>THIRD CAUSE OF ACTION</u>

<u>DECLARATORY RELIEF</u>

~~85~~92.  Plaintiff, on behalf of himself and the Class and New York State ~~Sub-Classes~~<u>Sub-Classes</u> Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

~~86~~93.  An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with

applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y. Exec. Law § 296, *et seq.*, prohibiting discrimination against the blind.

~~87~~94.  A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*~~,~~ and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, and the laws of New York

d.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York State Human Rights Law;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: Hackensack, New Jersey
September 9~~June 27~~, 2024

STEIN SAKS, PLLC
By: _/s/ Rami Salim_
Rami Salim, Esq.
rsalim@steinsakslegal.com
One University Plaza, Suite 620
Hackensack, NJ 07601
Tel: (201) 282-6500
Fax: (201) 282-6501
ATTORNEYS FOR PLAINTIFF

| Summary report: Litera Compare for Word 11.9.1.1 Document comparison done on 9/9/2024 3:51:49 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Fernandez v. Buffalo Jackson - Complaint.docx | |
| **Modified filename:** Fernandez v. Buffalo Jackson - First Amended Complaint.docx | |
| **Changes:** | |
| Add | 85 |
| Delete | 75 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 160 |