**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FELIPE FERNANDEZ, on behalf of himself and
all others similarly situated,

                     Plaintiff,

   -against-

BUFFALO JACKSON TRADING CO., LLC,

                    Defendant.

Case No.: 1:24-cv-04878-JPC

---

**DEFENDANT BUFFALO JACKSON TRADING CO., LLC'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF RELEVANT FACTS ..........................................................................4

ARGUMENT ....................................................................................................................6

I.     STANDARD UNDER FED. R. CIV. P. 12(B)(1)................................................6

II.    PLAINTIFF LACKS CONSTITUTIONAL STANDING ...................................6

    A    The Second Circuit's *Calcano* Decision ...............................................8

    B    Plaintiff Fails To Sufficiently Allege That He Suffered a Concrete and Particularized Injury...................................................................9

    C    Plaintiff Fails to Plausibly Plead an Intent to Return to the Website....................12

III.   PLAINTIFF'S CITY LAW CLAIM SHOULD BE DISMISSED ...................................21

IV.   ALTERNATIVELY, THE COURT SHOULD ALLOW DISCOVERY ON THE STANDING ISSUE AND, IF NECESSARY, HOLD AN EVIDENTIARY HEARING...................................................................22

V.    TITLE III OF THE ADA DOES NOT APPLY TO STAND ALONE WEBSITES.........25

CONCLUSION....................................................................................................................25

165847.00001/150845528v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernstein v. City of New York.*,
   621 F. App'x 56 (2d Cir. 2015) ..............................................................8

*Bunting v. Ogee, Inc.*,
   Case No. 1:21-cv-909 (LDH) (E.D.N.Y. Sept. 23, 2022)......................................20

*Calcano v. Jonathan Adler Enterprises, LLC.*,
   2022 WL 17978906 (S.D.N.Y. Dec. 28, 2022) ........................................21

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2d Cir. June 2, 2022) .......................................... *passim*

*Camacho v. Vanderbilt Univ.*,
   No. 18 CIV. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019)................6

*Carter v. HealthPort Techs.*,
   LLC., 822 F.3d 47 (2d Cir. 2016) ..............................................6

*Dawkins v. Schott NYC Corp.*,
   No. 22CV3617PKCTAM, 2023 WL 6283285 (E.D.N.Y. Sept. 26, 2023). ...............14, 15, 16

*Experian Information Solutions, Inc. v. Stein Saks, PLLC, et al.*,
   Case No. 8:24-cv-01186 ...........................................................1

*Feltzin v. Triangle Props. #1, LLC*,
   No. 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861 (E.D.N.Y.
   Dec. 15, 2016).......................................................................7

*Fountain v. Karim.*,
   838 F.3d 129 (2d Cir. 2016).......................................................22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................7

*Goldberg v. Stein Saks, PLLC*,
   No. 1:23-CV-3089 (MKV), 2024 WL 816518 (S.D.N.Y. Feb. 26, 2024)...............13

*Griffin v. Dep't of Labor Fed. Credit Union.*,
   912 F.3d 649 (4th Cir. 2019) .....................................................7

ii

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
 No. 19 CIV. 11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) ...........................12

*Harty v. W. Point Realty, Inc.*,
 28 F.4th 435 (2d Cir. 2022) ...........................................................................................7

*Harty v. W. Point Realty, Inc.*
 477 F. Supp. 3d 163 (S.D.N.Y. 2020)..........................................................................12

*Hennesssy by & through Hennessy v. Poetica Coffee Inc.*,
 No. 21CV5063KAMRML, 2022 WL 4095557 (E.D.N.Y. Sept. 7, 2022)...........................13

*Jaquez v, 3Wishes.com, Inc.*,
 Case No. 1:22-cv-2568 (VEC) (S.D.N.Y. August 25, 2022)............................................20

*Jaquez v. Aqua Carpatica USA, Inc.*,
 20-CV-8747(ALC), 2021 WL 3727094 (S.D.N.Y. August 20, 2021) .................................12

*Jimenez v. Senior Exch., Inc.*,
 No. 23-CV-323-ALC, 2024 WL 1833808 (S.D.N.Y. Apr. 26, 2024) ..................................24

*Katz v. Donna Karan Co., L.L.C.*,
 872 F.3d (2d Cir. 2017)..................................................................................................6

*Lopez v. W. Elm, Inc.*,
 No. 19 CIV. 10079 (ER), 2020 WL 6546214 (S.D.N.Y. Nov. 6, 2020) ..............................21

*Maddy v. Life Time, Inc.*,
 2023 WL 4364488, (S.D.N.Y. July 5, 2023). ...........................................................22, 23

*Martin v. City Hive, Inc.*,
 Case No. 1:23-cv-4933 (OEM), (E.D.N.Y. July 19, 2024) ...................................................23

*Martinez v. MyLife.com*,
 No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021) ...................................................................25

*Matzura v. Macy's Inc.*,
 No. 19-CV-9926 (ALC), 2022 WL 17718335 (S.D.N.Y. Dec. 15, 2022)............................21

*Mejia v. High Brew Coffee Inc.*,
 1:22-CV-03667-LTS, 2024 WL 4350912 (S.D.N.Y. Sept. 30, 2024)...................................25

*Mendez v. Apple Inc.*,
 No. 18 CIV. 7550 (LAP), 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019)........................12, 22

*Mercedes v. Broadway Play Publishing, Inc.*,
 Case No. 1:23-cv-9519 (JMF), (S.D.N.Y. May 24, 2024) .............................................22, 23

iii

*Murphy v. Regal Cinemas, Inc.*,
No. 19-CV-9930 (ALC), 2022 WL 17821218 (S.D.N.Y. Dec. 20, 2022)..............................21

*Range v. 230 W. 41st St. LLC*,
No. 17 CIV. 149 (LAP), 2020 WL 3034800 (S.D.N.Y. June 5, 2020) ...................................22

*Reiss v. Societe Centrale du Groupe des Assurances Nationales*,
246 F. Supp. 2d 273 (S.D.N.Y.)...............................................................................................22

*Rendon v. Berry Glob. Inc.*,
No. 22 CIV 10420 (CM), 2023 WL 3724795 (S.D.N.Y. May 30, 2023)...................12, 13, 20

*Robinson v. Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994)..........................................................................................................8

*Robles v. Domino's Pizza, LLC*,
913 F.3d 898 (9th Cir.), *cert. denied*, 140 S. Ct. 122 L. Ed. 2d 41 (2019) ...............................3

*Sookul v. Fresh Clean Threads*,
No. 1:23-cv-10164-GHW, 2024 WL 4499206 .........................................................................25

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016).................................................................................................................7

*Suris v. Crutchfield New Media, LLC*,
No. 122CV06961NRMRML, 2023 WL 3792512 (E.D.N.Y. June 2, 2023)....................13, 20

*Suris v. Gannett Co.*,
No. 20-CV-1793 (BMC), 2021 WL 2953218 (E.D.N.Y. July 14, 2021) ...............................25

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).....................................................................................................................6

*Tavarez v. Moo Organic Chocolates, LLC*,
641 F. Supp. 3d 76 (S.D.N.Y. 2022)..................................................................................20, 22

*Tavarez v. Moo Organic Chocolates, LLC*,
No. 21-CV-9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022) ...................22, 23, 24

*Thorne v. Bos. Mkt. Corp.*,
469 F. Supp. 3d 130 (S.D.N.Y. 2020).........................................................................................6

*Toro v. Gen. Store, LLC*,
No. 1:22-CV-6130 (MKV), 2023 WL 4624690 (S.D.N.Y. July 19, 2023)............2, 15, 16, 21

*TransUnion LLC v. Ramirez*,
—— U.S. ——, 141 S. Ct. 2190 L.Ed.2d 568 (2021).........................................................7, 8

*Velazquez v. Everlast Worldwide, Inc.*,
   No. 22-CV-9211 (VSB), 2022 WL 16745767 (S.D.N.Y. Nov. 7, 2022) ...............................19

*Velazquez v. Home Controls, Inc.*,
   No. 1:22-CV-3921 (MKV), 2023 WL 4622597 (S.D.N.Y. July 19, 2023).......................14, 19

*Wahab v. White's Boots, Inc.*,
   No. 23 CIV. 9018 (JHR) (GS), 2024 WL 3909083 (S.D.N.Y. Aug. 16, 2024)................11, 14

*Winegard v. Golftec Intell. Prop. LLC*,
   No. 23-CV-1244 (BMC), 2023 WL 3672540 (E.D.N.Y. May 26, 2023)....................... *passim*

*Winegard v. Newsday LLC*,
   556 F. Supp. 3d 173 (E.D.N.Y. 2021) ...............................................................................21, 25

*Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*,
   215 F.3d 247 (2d Cir. 2000)...................................................................................................22

*Zinnamon v. Profound Color, LLC*,
   Case No.: 1:23-cv-2722-LJL, 2023 WL 6882415 (S.D.N.Y. October 17, 2023)...............1, 14

*Zinnamon v. Satya Jewelry II, LLC*,
   Case No. 1:23-cv-781-VEC, 2023 WL 3511123 (S.D.N.Y. April 28, 2023).......................1, 14

## Statutes

ADA Title III, 42 U.S.C. § 12181, *et. seq.* ...........................................................................1, 4, 25

## Other Authorities

Fed. R. Civ. P.
   § 12(b)(1) .........................................................................................................................1, 6, 22
   § 12(b)(6) ............................................................................................................................1, 25

U.S. Const., Art. III, § 2...............................................................................................................6

v

Buffalo Jackson Trading Co., LLC ("Buffalo Jackson") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the First Amended Complaint by Felipe Fernandez ("Plaintiff") (the "FAC," ECF No. 9), pursuant to Fed. R. Civ. P. 12(b) (1) and (6).

## PRELIMINARY STATEMENT

This is one of many identical cases filed by Plaintiff, alleging that a business discriminates against blind & visually impaired consumers by maintaining an inaccessible website in violation of Title III of the American Disabilities Act, 42 U.S.C. § 12181, *et. seq.* ("ADA"). Unfortunately, the lawyers who regularly file these cases have hijacked a statute designed to legitimately preclude commercial discrimination against disabled consumers as a vehicle for corporate shakedowns.

Plaintiff's law firm, Stein Saks, has been sanctioned in this District for repeatedly filing "frivolous" website accessibility lawsuits like this. *See Zinnamon v. Satya Jewelry II, LLC*, Case No. 1:23-cv-781-VEC, 2023 WL 3511123, at *3 (S.D.N.Y. April 28, 2023); *Zinnamon v. Profound Color, LLC*, Case No.: 1:23-cv-2722-LJL, 2023 WL 6882415, at *1 (S.D.N.Y. October 17, 2023).[1] Stein Saks has filed over 1,200 (and counting) boilerplate ADA website complaints in the federal District Courts in New York over the past several years—22 of those on behalf of this particular Plaintiff who only started filing in May 2024.[2] Plaintiff claims to be a legally blind internet user who has been discriminated against because he supposedly cannot access www.buffalojackson.com (the "Website"). Like in all his other cases, Plaintiff alleges that the

---

[1] "In short, Mr. Rozenberg and Stein Saks had been told no fewer than four times before Mr. Rozenberg filed the instant complaint that his cookie-cutter approach to alleging standing was inadequate. Sanctions are appropriate where, as here, 'it should [be] patently obvious to any attorney who had familiarized himself with the law that the action was frivolous.'" *Satya Jewelry II*, 2023 WL 3511123, at *3.

[2] *See* List of PACER cases, attached at Exhibit 1 to the accompanying October 21, 2024 Declaration of Martin Krezalek ("Krezalek Decl.").

1

targeted website is inaccessible to him and other visually-impaired persons in violation of the ADA and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").

Plaintiff and his counsel may ask this Court to ignore their serial litigation history. But it is important to consider that Congress did not enact the ADA to benefit serial filers like Plaintiff. As courts have recognized, a case like this "*saps judicial resources, wastes attorneys' and litigants' time, and ultimately mock[s] the statute's mission.*" *Winegard v. Golftec Intell. Prop. LLC*, No. 23-CV-1244 (BMC), 2023 WL 3672540, at \*5 (E.D.N.Y. May 26, 2023). *"The limited resources of the federal courts need to be marshaled for **resolving genuine disputes**, not to provide a platform for extracting nuisance settlements that do little, if anything, to further the important goals of the ADA.*" *Id.* (emphasis added).[3] Thanks to a series of decisions recognizing that serial ADA filers often fail to satisfy the threshold issue of justiciability, ADA serial website complaints are now reviewed "*with a critical eye to ensure that [the plaintiff] seeks relief for harms honestly endured, and not merely manufactured.*" *Toro v. Gen. Store, LLC*, No. 1:22-CV-6130 (MKV), 2023 WL 4624690, at \*3 (S.D.N.Y. July 19, 2023). Gone are the days where implausible boilerplate allegations of injury—like those in the FAC—can survive dismissal.

Buffalo Jackson is a quintessential small town America success story. Buffalo Jackson is an American heritage leather goods and apparel e-commerce retailer based out of Matthews, North Carolina. (Hood Decl. ¶ 3).[4] The company's brand and the goods sold on the Website are a blend of all that's good from the South with an influence of classic Western Wilderness. (*Id.* ¶ 4).

---

[3] Stein Saks's modus operandi may not be limited to ADA serial litigation. On June 3, 2024 Stein Saks was sued in the California Central District Court by credit reporting company, Experian Information Solutions. The suit contends that Stein Saks operated a nationwide RICO enterprise scheme to force Experian to settle sham lawsuits brought under the Fair Credit Reporting Act. *See Experian Information Solutions, Inc. v. Stein Saks, PLLC, et al.*, Case No. 8:24-cv-01186 (*See* Complaint, attached at Krezalek Decl., Ex. 2).

[4] Declaration of Alexander (Xan) Hood, dated October 21, 2024 (hereinafter, "Hood Decl.").

Buffalo Jackson proudly exemplifies certain values, including hard work, pioneering, love for adventure, and a dedication to a simpler way of life. (*Id.* ¶ 5). To that end, the company takes pride in crafting products that reflect the company's time-honored traditions as well as its rugged spirit. (*Id.*). Importantly, Buffalo Jackson markets and sells its products to <u>all</u> individuals. (*Id.* ¶ 7). The company's founder takes pains to ensure that the business is at all times conducted consistently with certain nonnegotiable ethical values. (*Id.* ¶ 6). The notion that Buffalo Jackson "*has engaged in acts of intentional discrimination*," including purposefully "*[c]onstructing and maintaining a website that is inaccessible to visually-impaired individuals*,"[5] is thus patently absurd, offensive, and anathema to the core of Buffalo Jackson's mission and business model. (*Id.* ¶ 7).

Buffalo Jackson's website is accessible to the blind and visually impaired. Long before Plaintiff supposedly visited the Website, Buffalo Jackson had expended funds to ensure full and equal enjoyment for persons with disabilities. (*Id.* ¶¶ 8-14). Buffalo Jackson is committed to maintaining the accessibility of the Website into the future. (*Id.* ¶15). If forced to litigate this action, Buffalo Jackson will demonstrate its ongoing efforts around accessibility and meeting the evolving guidelines that are typically used to measure website accessibility.[6] This case need not reach the merits, however. The FAC must be dismissed for the fundamental reasons that (1) it fails to plausibly allege that Plaintiff suffered a concrete and particularized injury by virtue of

---

[5] FAC ¶ 59.

[6] The World Wide Web Consortium ("W3C") is a private organization that develops website standards. W3C's Web Accessibility Initiative publishes Web Content Accessibility Guidelines ("WCAG"), which are "private industry standards for website accessibility developed by technology and accessibility experts." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 902 n. 1 (9th Cir.), *cert. denied*, 140 S. Ct. 122, 205 L. Ed. 2d 41 (2019); *see also* Web Accessibility Initiative, Web Content Accessibility Guidelines (WCAG) Overview, https://www.w3.org/WAI/standards-guidelines/wcag. Though WCAG are "private, unenforceable guidelines," *Robles*, 913 F.3d at 907, they "have been widely adopted, including by federal agencies, which conform their public-facing electronic content to" WCAG standards. *Id.* at 902 n. 1. WCAG 2.0 is the most widely adopted version of the guidelines.

having encountered any supposed barriers, and (2) it fails to allege any facts giving rise to a plausible inference that Plaintiff is truthful when he says that he "*intends to visit the Website in the near future if it is made accessible*" (FAC ¶ 54).

As demonstrated below, Plaintiff has no standing for prospective relief under the standard established in the Second Circuit's *Calcano* decision. And even if Plaintiff had standing, the FAC must be dismissed because Buffalo Jackson's stand-alone website is not a place of public accommodation under Title III of the ADA.[7]

## STATEMENT OF RELEVANT FACTS

Plaintiff alleges he is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. (FAC ¶ 2). Plaintiff references "several screen-reading software programs" that are available to blind users, including Job Access With Speech, otherwise known as "JAWS" and NonVisual Desktop Access, otherwise known as "NVDA," and alleges that he was using NVDA when he purportedly accessed the Website. (*Id.* ¶¶ 34, 41). Plaintiff alleges that version 2.1 of the WCAG are the "well-established guidelines for making websites accessible to blind and visually-impaired people." (FAC ¶ 36). Plaintiff does not allege that the WCAG 2.1 guidelines have the force of law, or that any authority obligates Buffalo Jackson to meet these guidelines. (*See* FAC, *generally*).

Plaintiff claims he visited the Website "multiple times," but only specifies one particular date, April 15, 2024, which was just several weeks prior to his filing of this Action. (FAC ¶¶ 41, 46). Plaintiff does not mention any other specific dates on which he visited the Website prior to his lawsuit, and he does not allege that he regularly visited the Website. (*Id.*, *see also* FAC,

---

[7] And because Plaintiff's ADA claim fails, which is the sole claim through which this Court has original jurisdiction, Plaintiff's City law claim should also be dismissed

*generally*).  Plaintiff does not allege that he ever previously made a purchase from the Website. (*Id.*, *see also* FAC, *generally*).

Plaintiff claims that he came across the Website via "Google" search. (FAC ¶ 44).  Plaintiff does not explain the criteria for his search, but pleads that the ". . . *Website holds themselves out as an online store renowned for its high-quality leather goods and rugged outdoor apparel. They offer a variety of products including leather jackets, bags, wallets, and accessories that combine classic craftsmanship with durable materials designed for both casual and adventurous lifestyles. The Website also offers ten percent off a first purchase.*"  (*Id.*).  For these reasons, Plaintiff alleges that he "*desired to buy products from the Website.*"  (*Id.*).  In particular, Plaintiff identifies the "Thompson leather moto jacket," which he claims he wanted to purchase because "*he was looking for a robust and stylish leather jacket that would offer both comfort and a classic aesthetic. He sought a universal jacket for casual wear and which would suit any look.*"  (FAC ¶ 43).  Curiously, Plaintiff's criteria tracks the Website's description of the jacket.[8]  Plaintiff does not allege that he searched for comparable jackets at any other online retailers. (*See id.*; *see also* FAC, *generally*).

Plaintiff alleges that the "*Website has never been equally accessible,*" and that "*[Buffalo Jackson] lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible.*" (FAC ¶ 62).  He claims that the Website contained some combination of barriers (¶¶ 46-47), which apparently denied him the ability to use and enjoy the Website the same way sighted individuals do. (*Id.*).  Regarding his future intentions, Plaintiff claims that "*Despite this direct harm and frustration, [he] intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically to purchase the*

---

[8] See https://buffalojackson.com/products/thompson-leather-moto-jacket-black?variant=39409677238324

*Thompson leather moto jacket, if remedied.*"    (FAC ¶ 31).  Plaintiff later repeats that he "*intends to visit the Website in the near future if it is made accessible.*" (*Id.* ¶ 54).

Plaintiff seeks, among other things, a preliminary & permanent injunction to prohibit Buffalo Jackson from violating the ADA and NYCHRL and to take all steps to make the Website "complaint"; compensatory damages; and attorneys' fees.  (FAC at 21-22 "Prayer for Relief").

## ARGUMENT

## I.    STANDARD UNDER FED. R. CIV. P. 12(B)(1)

A defendant may attack subject matter jurisdiction on a Rule 12(b)(1) motion in two ways—a facial attack or factual attack.  *Camacho v. Vanderbilt Univ.*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019).  For purposes of a *factual* challenge, a defendant may proffer evidence beyond the pleadings. *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56-57 (2d Cir. 2016).  The burden is on the plaintiff asserting subject matter jurisdiction to "prov[e] by a preponderance of the evidence that [subject matter jurisdiction] exists." *Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 134 (S.D.N.Y. 2020).  A plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems" with respect to jurisdiction. *Camacho*, 2019 WL 6528974, at *9 (internal citations omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).

## II.    PLAINTIFF LACKS CONSTITUTIONAL STANDING

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The "irreducible constitutional minimum" of

6

standing consists of three elements—a plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*quoting Lujan*, 504 U.S. at 560); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000).

"Particularized" injuries "affect the plaintiff in a personal and individual way." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442–43 (2d Cir. 2022) (citation omitted). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc.*, 136 S. Ct. at 1549. "Even where a plaintiff personally encounters conditions that allegedly violate the ADA, [] such encounter must cause an injury that is both concrete and particular to the plaintiff in order to be sufficient to establish standing." *Feltzin v. Triangle Props. #1, LLC*, No. 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *12 (E.D.N.Y. Dec. 15, 2016). The Supreme Court has made clear "that the harm needed to find Article III standing must be something greater than a bare procedural violation, divorced from any concrete harm." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 657 (4th Cir. 2019) (dismissing ADA website accessibility claim). A plaintiff has standing to bring a claim following a statutory violation "only when he can show a current or past harm beyond the statutory violation itself." *Harty*, 28 F.4th at 443 ("*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing").

Where, as here, a plaintiff alleges injury from his supposed inability to obtain information from a website, the plaintiff "must also allege downstream consequences from failing to receive the required information in order to have an Article III injury in fact." *Harty v. W. Point Realty, Inc.*, 28 F.4th at 444. Put simply, "[n]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2200, 210 L.Ed.2d 568 (2021).

Finally, where, as here, a plaintiff seeks injunctive relief, he "must also prove that the identified injury in fact presents a 'real and immediate threat of future injury,' often termed a 'likelihood of future harm.'" *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015). In the ADA context, that means plaintiff must allege (1) a past injury under the ADA; (2) that it is reasonable to infer that the discriminatory treatment will continue; and (3) it is reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants [businesses] to plaintiff's home, that plaintiff intended to return to the subject location. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. June 2, 2022). As clarified in *Calcano* (discussed below), this risk of future harm must be material, imminent, and substantial. The FAC must be dismissed because Plaintiff cannot prove, as he must, by a preponderance of the evidence that he has standing. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

**A    The Second Circuit's *Calcano* Decision.**

In *Calcano*, the Second Circuit issued a seminal decision explaining what is required to plead an injury in fact in an ADA case. *Calcano*, 36 F.4th at 71. The court reaffirmed that "an ADA plaintiff has suffered an injury when, among other things, it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." *Id*. at 72 (*quoting Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013). The court clarified that, after the

8

Supreme Court's *TransUnion* decision, "conclusory allegations of intent to return and proximity are not enough—in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' Plaintiffs must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Id*. (*quoting TransUnion LLC*, 141 S. Ct. at 2210). In particular, the court noted that, when seeking injunctive relief, the plaintiff "may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'" *Id*. at 74 (*quoting Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). Such "threatened injury must be certainly impending to constitute injury in fact, and ... allegations of possible future injury are not sufficient." *Id*..

*Calcano* focused on the third ADA future harm risk factor—*i.e.*, whether it is reasonable to infer that plaintiff intended to return. *Id*. at 75. Noting that this factor was critical to ensure that "the risk of harm is sufficiently imminent and substantial," the court held that "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the 'totality of all relevant facts,'' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Id*. The court made clear that assessing plausibility was "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 75. Moreover, the court made clear that the kind of "transparent cut-and-paste and fill-in-the-blank pleadings" that are pervasive in website accessibility context, are not enough to plausibly state an injury. *Id*. at 77 ("This backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury.").

**B      Plaintiff Fails To Sufficiently Allege That He Suffered a Concrete and Particularized Injury**

9

Plaintiff's claims are based on boilerplate and conclusory allegations that fall short of alleging an injury, or any downstream consequences flowing from the supposed Website barriers.

Plaintiff identifies just one specific visit to the Website about two months prior to the filing of this lawsuit. (FAC ¶¶ 20, 46).  He admits that he was able to navigate and view the Website insofar as he was able to determine what the Website "holds itself out to be" and what it offers. He even admits to being able to learning about available discounts. (FAC ¶ 23).  He further admits that he was able to determine that "the Website also offers the most styles and purchase options of the products the Defendant creates and sells." (*Id.*¶ 24).  Nevertheless, he claims that he was somehow "unable to complete the purchase." (*Id.* ¶ 25).

To be sure, Plaintiff marshals several "common" accessibility issues (FAC ¶ 37(a)-(q)), and alleges that some combination of these issues (*Id.* ¶ 44-45) denied him the ability to enjoy the Website the same way sighted individuals do. (*Id.* ¶ 47). But despite amending his original Complaint to manufacture detail in his FAC, Plaintiff still fails to provide any meaningful specificity.  For example, he does not explain which barriers were encountered on which dates (*e.g.*, were these barriers encountered on April 15, 2024, or during his other supposed "multiple visits"?).  (*Id.*).  Nor does Plaintiff explain where exactly on the Website (page/URL) he supposedly encountered these barriers. (*See, e.g.,* FAC ¶ 49, generically referring to "Plaintiff's desired product page").  Most importantly, Plaintiff does not articulate how these barriers caused him injury, only claiming that he was "*denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations . . .*" (*Id.* ¶ 46).

In his FAC, Plaintiff adds four new paragraphs purporting to specify how he was injured by the supposed barriers (*See* FAC ¶¶ 49-52).  But these allegations merely reflect Plaintiff's view or opinion of how information should be presented on a website.  (*Id.*) Critically, Plaintiff fails to

<center>10</center>

explain where the obligations to provide the features that he complains are missing come from. Plaintiff cites to no language in the ADA (or any regulations promulgated thereunder). (*Id*.) And despite identifying the WCAG 2.1 guidelines as the "well-established guidelines for making websites accessible to blind and visually-impaired people" (FAC ¶ 36), Plaintiff fails to identify any guidelines that were violated. (*See id*. ¶¶ 49-52).

Moreover, Plaintiff fails to identify any concrete downstream consequences that he suffered from any of these supposed barriers. He does not articulate how these barriers caused him injury, aside from claiming (in conclusory fashion) that "*[t]hese access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do*." (*Id*. ¶ 53). Parroting the law, Plaintiff alleges that, "*Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the Thompson leather moto jacket, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.*" (FAC ¶ 29). Save for these vague allegations, the FAC is devoid of any specifics as to *why* or *how* he was unable to use the Website to complete his purchase. (*See* FAC, *generally*). The Website includes direct contact information, including a telephone number, an email address, and a "Contact Us" link which allows users to send messages to a Buffalo Jackson representative. (Hood Decl. ¶ 17). Tellingly, Plaintiff does not allege to have ever contacted Buffalo Jackson at to report these issues or to request assistance in completing his desired purchase. (*Id*., *see also* FAC, *generally*). Buffalo Jackson would have been more than happy to accommodate any such request and to ensure that Plaintiff was able to make a purchase. (Hood Decl. ¶ 18).

The FAC's conclusory allegations are legally insufficient to plead an injury. *Wahab v. White's Boots, Inc.*, No. 23 CIV. 9018 (JHR) (GS), 2024 WL 3909083, at *10 (S.D.N.Y. Aug. 16,

<div align="center">11</div>

2024) (dismissing Stein Saks complaint: "[i]t is not impossible that each of these barriers existed on the [website] and caused [p]laintiff injury. But [p]laintiff's bare, boilerplate allegation that this was so simply cannot be taken at face value. At the very least, Plaintiff must allege some facts explaining which barriers impeded her ability to purchase the Lace-to-Toe boots and how they did so."); *Rendon v. Berry Glob. Inc.*, No. 22 CIV 10420 (CM), 2023 WL 3724795, at *4 (S.D.N.Y. May 30, 2023) (" . . . a conclusory statement without more factual detail – such as, for example, explaining what information Plaintiffs were unable to access; how this impacted their decision whether or not to buy stock in the Defendant; and what downstream injury they suffered by not purchasing that stock . . . is insufficient to show that Plaintiffs suffered an injury that is 'concrete and particularized' or that they would suffer "a real and immediate threat of future injury.") (*citing Harty*, 28 F.4th at 444); *see also Jaquez v. Aqua Carpatica USA, Inc.*, 20-CV-8747(ALC), 2021 WL 3727094, at *4 (S.D.N.Y. August 20, 2021) (allegations that plaintiff suffered an injury by going on the website with the intent of browsing and potentially purchasing a product are insufficient to plead an injury in fact); *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 CIV. 11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) (allegations "lacked all the requisite specificity necessary to establish an injury in fact," and were "insufficient to establish a concrete and particularized injury for standing purposes.") *Harty v. W. Point Realty, Inc.* 477 F. Supp. 3d 163, 168 (S.D.N.Y. 2020) (allegations amounting to "bare procedural violation[s], divorced from any concrete harm," cannot satisfy the injury-in-fact requirement.); *Mendez v. Apple Inc.*, No. 18 CIV. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) ("By failing specifically to assert any concrete injury, Plaintiff's claims fail as a matter of law.").    For this reason alone, Plaintiff has no standing and the ADA claim must be dismissed.

      **C**     **Plaintiff Fails to Plausibly Plead an Intent to Return to the Website**

Plaintiff also fails to satisfy the most important component of the *Calcano* standard – supplying non-conclusory, plausible, factual allegations demonstrating a real likelihood that he will return to the Website. As several courts in this Circuit have clarified, post-*Calcano*, pleading the definitiveness of the plaintiff's <u>intent to return</u> requires much more than what is pled here.

### 1.    Naked Assertions of Intent to Return are Insufficient

The law is now clear that "a plaintiff seeking injunctive relief may not rely solely on past injury, but also must establish that [he] is likely to be harmed again in the future in a similar way." *Calcano*, 36 F.4th at 74. "Conclusory" or "naked" assertions of intent to return to the business are not enough—intent to return must be pled with detail and specificity. *Id.* at 77.  District courts applying *Calcano* have confirmed that the decision changed the game when it comes to serial ADA litigation—in particular, making clear that boilerplate pleading practice no longer suffices:

> In sum, the complaint was filed at a time when courts in this circuit routinely accepted a "boilerplate recitation" of the *Kreisler* factors, absent any "specific plans to return" to the defendant's business . . . In *Calcano*, however, the Second Circuit clarified that a "conclusory invocation[ ]" of the *Kreisler* factors is insufficient, and that a plaintiff must do more than plead "the magic words that a plaintiff 'intends to return.' (*citing Calcano*, 36 F.4th at 75)

*Hennessy by & through Hennessy v. Poetica Coffee Inc.*, No. 21CV5063KAMRML, 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022); *see also Suris v. Crutchfield New Media, LLC*, No. 122CV06961NRMRML, 2023 WL 3792512, at *3 (E.D.N.Y. June 2, 2023) (". . .  following *Calcano*, district courts have dismissed for lack of standing in ADA website cases raising conclusory allegations similar to what Plaintiff raises here"); *Rendon* 2023 WL 3724795, at *6 ("The complaints in these [website accessibility] actions contain the same 'cut-and-paste and fill-

13

in-the-blank' allegations that existed in *Calcano*, which only serves to underscore the implausibility of [p]laintiffs' claims").[9]

Stein Saks's frivolous lawsuits are regularly dismissed for failing to satisfy the *Calcano* standard.[10]  In *Dawkins v. Schott NYC Corp.*, the court dismissed an identical complaint by another Stein Saks-represented serial litigant. No. 22CV3617PKCTAM, 2023 WL 6283285, at *5 (E.D.N.Y. Sept. 26, 2023).   There, just as here, the plaintiff alleged that he "intends to visit the Website in the near future if it is made accessible." *Id*. at * 2 (compare with FAC ¶ 54).  In an affidavit submitted in opposition to defendant's 12(b)(1) motion to dismiss, the plaintiff supplemented the record with allegations very similar to those here—in particular, providing two dates on which he visited defendant's website and identifying a particular product he wanted to purchase—a "classic perfecto" leather jacket. *Id*. at * 1.  Plaintiff explained how he came to learn of the website—an article published in Vice, and. like here, attempted to explain why he wanted to buy that particular jacket—because of its "iconic look." *Id*.  The court found that, plaintiff's complaint—even considered together with the supplemental information provided in his affidavit—did not contain allegations sufficient to confer standing to bring this matter under the ADA.  *Id*. at *3.  In particular, the court noted that plaintiff's pleading failed to allege several important factors to "nudge" his complaint across the line from conceivable to plausible, including failing to allege: (i) the genesis of his sudden need or want for defendant's jacket; (ii) that

---

[9] In fact, when the tables were turned and Stein Saks was itself sued in a lawsuit claiming that its website was not accessible, Stein Saks invoked the *Calcano* standard in seeking dismissal and, for the same reasons articulated in this motion, the complaint against Stein Saks was dismissed for lack of standing.  *Goldberg v. Stein Saks, PLLC*, No. 1:23-CV-3089 (MKV), 2024 WL 816518, at *4 (S.D.N.Y. Feb. 26, 2024) ("Goldberg's reliance on a mere profession of an intent to return to [the Website] is not enough to establish standing for prospective relief.") (quoting *Calcano*)

[10] *See, e.g.*, the *Satya Jewelry II, LLC*, *Profound Color, LLC*, *White's Boots*, and *Home Controls* cases discussed herein.

defendant was the only retailer that sells the particular jacket he wants; (iii) that he had searched for comparable jackets but was unable to find them at a comparable price point; and (iv) failing to offer some factual context for his intent to return to the website and instead simply stating that conclusion as fact. *See id.* at *4 (citing cases). Accordingly, the court found that, even as supplemented, plaintiff's claims remained "vague assertions" and "bare allegation[s]" akin to those rejected by the Second Circuit in *Calcano.*" *Id.* (*quoting Calcano*, 36 F.4th at 76–77). The complaint was dismissed because "[s]tanding requires more." *Id.*

*Toro v. Gen. Store, LLC* is equally illustrative. In *Gen. Store*, the plaintiff filed a complaint alleging "numerous visits" to the website. 2023 WL 4624690 at *3. The plaintiff's original allegations were similar to those in Plaintiff's Complaint here, including allegations of visiting the website just a few weeks prior to her filing of the lawsuit, and identifying specific products that plaintiff supposedly intended to purchase. *Toro v. Gen. Store, LLC*, 2023 WL 4624690, at **3-4. However, the plaintiff amended her complaint (like here, in response to defendant's pre-motion letter) to add detail that goes beyond Plaintiff's allegations here. *Id.* The court nonetheless dismissed the claim for lack of standing because plaintiff's allegations were implausible <u>even as amended</u>. In particular, the court cast doubt on plaintiff's allegations that she was unable to find the exact style of earrings at other affordable retailers and that purchasing from the manufacturer would be an inadequate alternative. *Toro v. Gen. Store, LLC*, 2023 WL 4624690, at *4 ("This explanation is dubious at best and, in any event, is purely speculative . . . [i]f it is the earrings that Plaintiff wants (as opposed to another lawsuit) there are options").

Similarly, in *Winegard v. Golftec Intell. Prop. LLC*, the court dismissed an ADA website complaint filed by a serial filer. No. 23-cv-1244, 2023 WL 3672540, at *5 (E.D.N.Y. May 26, 2023). The court characterized as "paltry" the plaintiff's allegations of his intent to return. *Id.* at

15

\*3.  Particularly, the court noted that the plaintiff did not claim to have previously patronized defendants' business and only identified one specific visit to defendants' website ten days before filing the lawsuit.[11]  *Id*.  ("To find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites (possibly after being referred to them by their non-sensory-impaired lawyer), and bring 50 lawsuits. Standing requires more.").

### 2.      This Complaint Should be Dismissed for Lack of Standing

The allegations in the FAC here are even paltrier than those in *Schott NYC Corp., Gen. Store* and *Golftec*.  Plaintiff identifies only <u>one specific visit</u> to the Website, (conveniently) made several weeks prior to his filing of the lawsuit. (FAC ¶ 20).  The FAC offers no detail whatsoever regarding any previous visits to the Website, or the frequency of such visits, or what leather goods or other items that he ever browsed (or tried to purchase) from the Website.  (*See* FAC, *generally*). While Plaintiff claims that he "*came across [the] Website via Google search*" he does not explain the criteria for his supposed search or otherwise explain how Google led him to this particular Website. (*Id*. ¶ 44).  While Plaintiff tries to manufacture standing by identifying a particular jacket that he supposedly intended to purchase (*Thomson leather moto*), he does not articulate the genesis of his sudden need or want for this particular jacket.  (*See* FAC, *generally*).  Further, while Plaintiff purports to explain the type of product he was looking for (FAC  ¶ 43), this "motive" paragraph amounts to nothing more than a rough paraphrasing of the Website's description of the jacket. Plaintiff does not allege that Buffalo Jackson is the only retailer that sells this particular style of jacket, or that he had searched for comparable jackets but was unable to find them at a comparable price point.  (*See* FAC, *generally*).   Most importantly, Plaintiff offers no factual context for his

---

[11] The plaintiff's allegations that she visited the website on other unspecified occasions (as Plaintiff alleges here) were "not particularized enough to be plausible."  *Golftec Intell.*, 2023 WL 3672540, at \*3.

16

intent to return to the website and instead simply states that conclusion as fact. (*Id.* ¶ 54). Such allegations are insufficient. *Dawkins*, 2023 WL 6283285, at *4.

Plaintiff's wholly-conclusory allegations of his interest in Buffalo Jackson are implausible because they are identical to the allegations in other complaints he filed against scores of other businesses. Plaintiff's explanation for why he wanted to purchase goods from a particular business always involves the same two-step formula: (1) a generic statement describing what the company sells and/or prides itself in (usually cribbed from the website's "About Us" page), and (2) conclusory assertion that "*Therefore, Plaintiff desired to buy products from the Website.*" For example, in this case, Plaintiff alleges that:

> . . . This Website holds themselves out as an online store renowned for its high-quality leather goods and rugged outdoor apparel. They offer a variety of products including leather jackets, bags, wallets, and accessories that combine classic craftsmanship with durable materials designed for both casual and adventurous lifestyles. The Website also offers ten percent off a first purchase. Therefore, Plaintiff desired to buy products from the Website. (FAC ¶ 44)

Plaintiff made nearly identical conclusory allegations across his other complaints, including, by illustration:

- *Fernandez v. The Orvis Company, Inc.*, Case No. 24-cv-4180, (May 31, 2024 Complaint ¶ 42) ("This Website holds themselves out as an online store renowned for its high-quality outdoor apparel, accessories, and sporting goods. Company offers a wide range of clothing for men and women, including specialized gear for activities and unique travel gear. The Website also offers 15 percent off a first order and free shipping. Therefore, Plaintiff desired to buy products from the Website").

- *Fernandez v. Paksha, Inc.*, Case No. 24-cv-4177, (May 31, 2024 Complaint ¶ 42) ("Plaintiff came across Defendant's Website via "Google" search. This Website hold themselves out as an online store renowned its exquisite 925 silver jewelry, which combines traditional Indian craftsmanship with modern designs. The website offers a variety of handcrafted jewelry pieces including necklaces, earrings, bracelets, and rings. These items are celebrated for their intricate designs and quality materials, featuring styles that range from timeless classics to contemporary statement pieces. The Website also offers 10 percent off a first order. Therefore, Plaintiff desired to buy products from the Website").

17

- *Fernandez v. Great Wall 837, Inc.*, Case No. 24-cv-4171, (May 31, 2024 Complaint ¶ 41) ("This Website holds themselves out as an online platform of Great Wall restaurant renowned for offering wide array of authentic Chinese food, including options for dine-in, takeout, and delivery services. Therefore, Plaintiff desired to make an online order from the Website").

- *Fernandez v. Morgan Jewelers of Salt Lake City, Inc.*, Case No. 24-cv-4173, (May 31, 2024 Complaint ¶ 42) ("Plaintiff came across Defendant's Website via "Google" search. This Website holds themselves out as an online store renowned for its extensive collection of fine jewelry and watches. The store offers a wide array of engagement rings, wedding bands, diamonds, and other precious gemstones, alongside fashion jewelry and luxury items. Company emphasizes quality and customer service, providing lifetime warranties and custom jewelry options. Therefore, Plaintiff desired to buy products from the Website").

- *Fernandez v. Weyco Group, Inc.*, Case No. 24-cv-4880, (June 27, 2024 Complaint ¶ 42) ("This company is particularly known for their stylish and high-quality men's shoes that cater to both classic and contemporary fashion tastes. Additionally, the site provides a selection of suits, dress shirts, and casual wear, alongside various accessories like belts, hats, socks, and ties. Therefore, Plaintiff desired to buy products from the Website").

- *Fernandez v. For Wellness Labs, Inc.*, Case No. 24-cv-4884, (June 27, 2024 Complaint ¶ 42) ("This Website holds themselves out as an online store renowned for its range of functional food products designed to support overall health and performance. They offer a variety of nutritional supplements, including recovery gummies, superfood bites, and performance blends, all aimed at enhancing physical and mental wellness. Their products are geared towards improving focus, muscle recovery, and daily nutritional intake, utilizing science-backed ingredients. Therefore, Plaintiff desired to buy products from the Website") [12]

Plaintiff's supposed attempt to purchase the $489.95 Thomson moto jacket appears to have been part of a broad and random shopping spree occurring over several weeks in May-June—which included supposed attempts to purchase organic coffee, martial arts equipment, high end fashion sandals (from two separate vendors), wallets (from two separate vendors), handcrafted jewelry pieces (from three separate vendors), and gourmet Chinese food (from two separate

---

[12] *See* Complaints, attached as Exhibits 3-8 to the Krezalek Decl.  The above is just a sampling.  All of Plaintiff's complaints include similar formulaic language regarding his desire to purchase from the particular defendant.

restaurants).[13]  Taking Plaintiff's collective allegations at face value, one would have to believe

that Plaintiff intends to return to each of these websites and purchase each of these products.

Plaintiff's repetitive (and conclusory) declarations that he "desired to buy products" from the

various websites are not compelling, highly implausible, and cannot be credited.[14]  And Plaintiff's

equally repetitive boilerplate claims that he "intends to visit [each such] Website in the near future

if it is made accessible" (FAC ¶ 54) are even more dubious.  *Velazquez v. Home Controls, Inc.*, No.

1:22-CV-3921 (MKV), 2023 WL 4622597, at *3 (S.D.N.Y. July 19, 2023) (granting judgment on

the pleadings for lack of standing while recognizing that Stein Saks complaints always "allege in

boilerplate fashion that the Plaintiff visited a website, that the website is not ADA compliant, and

(always in paragraph 30) that the Plaintiff 'intends to visit the Website in the near future.'").[15]

        The Court need not evaluate Plaintiff's stated intent to return in a vacuum.  The FAC's

cookie-cutter assertions of standing are so implausible as to be "disturbing".  *Home Controls, Inc.*,

2023 WL 4622597, at *3 ("The frequency of [Stein Saks] filings and the "cut and paste" nature of

the conclusory allegations are disturbing");  *Golftec*, 2023 WL 3672540, at *3 (quoting *Calcano*,

36 F.4th at 77).  The demonstrably cut & paste job demonstrates that the FAC is precisely the kind

of conclusory "*Mad Libs–style complaint[]*" which cannot survive dismissal.  *Calcano*, 36 F.4th

---

[13] *See* Krezalek Decl. Exhs. 3-8.

[14] Applying Plaintiff's logic, the undersigned counsel could plausibly plead an intent to purchase a $3 million Bugatti by alleging: "*BUGATTI holds itself out as being at the pinnacle of the automotive industry for over 110 years, creating the world's most powerful and luxurious cars. Every car crafted since the company was founded by Ettore Bugatti in 1909 is desired by collectors and praised for its comfort, design, technology and performance. Moreover, BUGATTI customers experience the extraordinary in every step of their journey with the brand. From individualization to delivery and servicing, BUGATTI's customer service and attention to detail are as unique and unrivaled as is cars. **Therefore, Krezalek desires to buy a BUGATTI.**" (See https://www.bugatti.com/about-us/ and https://www.bugatti.com/ownership/introduction/). For good reason, such allegation could not be taken seriously, and neither can Plaintiff's allegations be taken seriously.

[15] *See e.g.*, *Fernandez v. Great Wall 837, Inc.*, Compl. ¶ 46; *Fernandez v. Morgan Jewelers of Salt Lake City, Inc.*, Compl. ¶ 47; *Fernandez v. The Orvis Company, Inc.*, Compl. ¶ 47; *Fernandez v. Weyco Group, Inc.*, Compl. ¶ 47; *Fernandez v. Paksha, Inc.*, Compl. ¶ 47.

at 77; *Velazquez v. Everlast Worldwide, Inc*., No. 22-CV-9211 (VSB), 2022 WL 16745767, at *1 (S.D.N.Y. Nov. 7, 2022) (allegations "fail adequately to allege standing, as they are at least as conclusory as the allegations in *Calcano*. Indeed, save for the caption, defendant name, and website name, the complaint is identical to six other complaints that Plaintiff filed the same day").[16]  Prototypical "plead the magic language" allegations have been repeatedly rejected by the courts in this Circuit.  *See*, *e.g.*, *Crutchfield New Media*, 2023 WL 3792512, at *4 (plaintiff's vague assertion that he "intends to return" to  website was implausible absent specification of *when* exactly he planned on returning to the website); *Rendon* 2023 WL 3724795, at *4 (no Article III standing where plaintiffs failed to specify (i) any detail about their past visits to the website or the frequency of such visits, (ii) what in particular they were hoping to learn by visiting the website, (iii) how the accessibility barriers prevented them from accomplishing their goals on the website, (iv) why they became interested in doing business with defendant, or (v) why they wished to return to the website as soon as the barriers are lifted, or specify *when* they planned to return to the website); *Bunting v. Ogee, Inc.*, Case No. 1:21-cv-909, at *4-5 (LDH) (E.D.N.Y. Sept. 23, 2022) (dismissing plaintiff's complaint in its entirety despite the fact that plaintiff alleged that she visited the website on numerous occasions, and even identified a specific product that she purportedly tried to purchase, because plaintiff made no allegations concerning regular use of the Website or a plausible intent to return); *Jaquez v, 3Wishes.com, Inc.*, Case No. 1:22-cv-2568 (VEC) (S.D.N.Y. August 25, 2022).[17] ("the allegations in the complaint in this action likely fail adequately to allege standing, as they are just as, if not more, conclusory as the allegations in the complaints at issue in

---

[16] As recognized in *Golftec*, the plaintiff's history as a serial filer directly "bears on the plausibility of his standing claim," 2023 WL 3672540, at *3.  Indeed, factoring the plaintiff's litigation proclivities into the plausibility analysis is compelled by the Second Circuit's holding in *Calcano*.  *Id.*; *see also Rendon*, 2023 WL 3724795, at *6.
[17] Attached at Exhibit 9 to the Krezalek Declaration.

*Calcano*."); *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81-83 (S.D.N.Y. 2022) (plaintiff likely lacked standing where he failed to plead facts from which the Court could plausibly infer he intends to return to the website).[18]

The Court should draw on its judicial experience and common sense in reviewing the allegations in the FAC. Weighing the allegations here against the backdrop of the Plaintiff's other filings, this Court would have to believe that Plaintiff intends to return, not just to the subject Website to purchase the Moto jacket, but also to every one of the websites that Plaintiff targeted, and to purchase every one of the products identified in his numerous complaints. Buffalo Jackson respectfully submits that, upon weighing the allegations "*with a critical eye to ensure that [the plaintiff] seeks relief for harms honestly endured, and not merely manufactured*," the only possible result here is dismissal of the FAC. *See Gen. Store, LLC*, 2023 WL 4624690, at *3.

## III.    PLAINTIFF'S CITY LAW CLAIM SHOULD BE DISMISSED

Because Plaintiff lacks standing under the ADA, his NYCHRL claim should also be dismissed. *Toro v. Gen. Store, LLC*, 2023 WL 4624690, at *4 ("Plaintiff's New York State and City claims are governed by the same standing requirements as her ADA claim . . . [t]he Court has found that Plaintiff lacks standing under the ADA. Accordingly, the Court finds that Plaintiff's state and city law claims must also be dismissed for lack of standing."); *Winegard*, 556 F. Supp. 3d at 183; *Lopez v. W. Elm, Inc.*, No. 19 CIV. 10079 (ER), 2020 WL 6546214, at *3 (S.D.N.Y.

---

[18] Courts in *non-website* ADA cases have similarly dismissed cases based on such conclusory allegations regarding the plaintiff's intent to return. *See, e.g., Calcano v. Jonathan Adler Enterprises, LLC*, 2022 WL 17978906, at **2-3 (S.D.N.Y. Dec. 28, 2022) (plaintiff failed to allege exactly where she lived in New York City, or that she was a customer at defendant's business on a prior occasion); *Murphy v. Regal Cinemas, Inc.*, No. 19-CV-9930 (ALC), 2022 WL 17821218, at *2 (S.D.N.Y. Dec. 20, 2022) (Plaintiff's allegations were too conclusory to establish standing under the *Calcano* standard where plaintiff simply asserted that he "has been a customer at Defendant's stores on prior occasions" and intends to make a purchase when the alleged barriers are lifted); *Matzura v. Macy's Inc.*, No. 19-CV-9926 (ALC), 2022 WL 17718335, at *2 (S.D.N.Y. Dec. 15, 2022) (plaintiff's allegations here were too conclusory to establish standing where plaintiff did not assert he had been a customer at defendant's business, nor does he provide any details about any past visits or why he wanted to make the particular purchase so urgently).

Nov. 6, 2020); *Range v. 230 W. 41st St. LLC*, No. 17 CIV. 149 (LAP), 2020 WL 3034800, at *7

(S.D.N.Y. June 5, 2020); *Mendez*, 2019 WL 2611168, at *4.

## IV.    ALTERNATIVELY, THE COURT SHOULD ALLOW DISCOVERY ON THE STANDING ISSUE AND, IF NECESSARY, HOLD AN EVIDENTIARY HEARING

On a Rule 12(b)(1) motion, the court may resolve disputed jurisdictional fact issues by

referring to evidence outside of the pleadings *and if necessary, hold an evidentiary hearing*. *Zappia*

*Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (affording

discovery solely on the jurisdictional issue); *see also Fountain v. Karim*, 838 F.3d 129, 134 (2d

Cir. 2016); *Reiss v. Societe Centrale du Groupe des Assurances Nationales*, 246 F. Supp. 2d 273,

277 (S.D.N.Y.), as amended (Feb. 25, 2003), supplemented, 246 F. Supp. 2d 285 (S.D.N.Y. 2003).

In *Moo Organic Chocolates,* Judge Caproni reviewed plaintiff's allegations—nearly

identical to Plaintiff's here—and found them to be "not [] particularly plausible." 641 F. Supp. 3d

at 81. Acknowledging "significant concerns" regarding the accuracy of the allegations, the court

noted that it was "not required to ignore reality" *Id*. at 81-82, n.6.  Due to its skepticism, the court

permitted defendant to take jurisdictional discovery of the Plaintiff.  *Id*. at 83.  Similarly, in *Maddy*

*v. Life Time*, the Honorable Lewis J. Liman granted defendant's motion for limited jurisdictional

discovery because Plaintiff's implausible allegations raised substantial questions about Plaintiff's

standing. No. 22-CV-5007 (LJL), 2023 WL 4364488, at **8-9 (S.D.N.Y. July 5, 2023).

Most recently, in two cases involving nearly identical complaints filed by Stein Saks, the

courts similarly granted defendants' motions for limited jurisdictional discovery and for an

evidentiary hearing.   In *Mercedes v. Broadway Play Publishing, Inc.*, Judge Furman granted

defendant's motion because of his "grave doubts that Mercedes's professed intent to return to the

Website [was] genuine." Case No. 1:23-cv-9519 (JMF), at *2 (S.D.N.Y. May 24, 2024)[19]. Among other things, the court noted the plaintiff's serial filing history, the "inherent dubiousness" of plaintiff's stated reasons for wanting to purchase the particular product, and the fact that plaintiff had apparently visited the website only twice, shortly before filing the lawsuit. *Id*. The court ordered an in-person evidentiary hearing limited to the question of whether plaintiff had standing, and granted defendant leave to take discovery on the issue of standing, including but not limited to a deposition of plaintiff and, a forensic examination of his computer. *Id*. at *3. A few months later, in *Martin v. City Hive, Inc.*, the Honorable Orelia E. Merchant, similarly granted defendant's motion to the extent that it sought an evidentiary hearing and jurisdictional discovery. Case No. 1:23-cv-4933 (OEM), at *1 (E.D.N.Y. July 19, 2024).[20] There, the court noted its concerns about plaintiff's true intent. *Id*. at *2 ("The Court has concerns regarding the sincerity of Plaintiff's "inten[tion] to attempt to access the Website in the future…if remedied" for many of the same reasons set forth by Defendant in its brief."). Similar to *Broadway Play*, the court relied on the fact that plaintiff visited the website only twice, his last visit just weeks before filing the complaint, Stein Saks' serial filing history, and the fact that plaintiff's complaint was a "largely [] a 'cut-and-paste' and 'fill-in-the blank pleading'". *Id*. at *3. As in *Broadway Play*, the court ordered an in-person evidentiary hearing limited to the question of whether plaintiff had standing, and granted defendant leave to take discovery on the issue of standing, including but not limited to a deposition of plaintiff and, a forensic examination of his computer. *Id*. at *4.

The undersigned counsel represented defendants, *Moo Organic, Inc., Life Time, Inc., Broadway Play Publishing*, and *City Hive*, in the four above-referenced cases and represents that

---

[19] Attached at Exhibit 10 to the Krezalek Decl.
[20] Attached at Exhibit 11 to the Krezalek Decl.

all four of these cases were voluntarily dismissed by the plaintiffs (with no monetary payments) immediately after the rulings.  Krezalek Decl. ¶ 15.  This is telling.

Buffalo Jackson respectfully submits that, if this Court is similarly skeptical of Plaintiff's intentions here (and for the above reasons, it should be), then the Court should allow discovery solely on the jurisdictional issue and, if necessary, hold an evidentiary hearing to resolve any jurisdictional fact issues. Discovery in this limited context would include a deposition of Plaintiff and potentially a forensic examination of his computer. The latter would be highly relevant because, like in all of his other case, Plaintiff claims to have come across the Website via "Google" Search (FAC ¶ 23)[21].   A forensic examination of his computer could easily confirm these allegations (or expose their falsity).  Buffalo Jackson also requests that jurisdictional discovery extend to *Plaintiff's counsel's* pre-suit visits to the Website.  As has been exposed in other cases, website accessibility cases are born when the serial plaintiffs' lawyers who file these cases identify target websites and thereafter direct plaintiffs to visit the site.  Such "bad faith" conduct undermines standing and should be explored in the interest of the integrity of the legal system.

> Defendant also argues that *Plaintiff and her counsel alleged standing in bad faith. Defendant states that Plaintiff's counsel visited the Website in December 2022, weeks before the date Plaintiff allegedly visited the website in the original complaint, which 'suggests ... that [Plaintiff's counsel] intended to pursue litigation ... before [Plaintiff] was even purportedly harmed'* . . . *This Court notes that this allegation, if true, might call Plaintiff's standing into question based on lack of concrete injury.* In similar ADA cases where 'there are significant reasons to question [p]laintiff's standing,' courts in this district have 'permit[ed] limited jurisdictional discovery'.

*See Jimenez v. Senior Exch., Inc.*, No. 23-CV-323-ALC, 2024 WL 1833808, at *5 (S.D.N.Y. Apr. 26, 2024) (emphasis added) (*quoting Life Time, Inc.* and *Moo Organic Chocolates*).

---

[21] *See e.g.*, *Fernandez v. Great Wall 837, Inc.*, Compl. ¶ 42; *Fernandez v. Morgan Jewelers of Salt Lake City, Inc.*, Compl. ¶ 42; *Fernandez v. The Orvis Company, Inc.*, Compl. ¶ 42; *Fernandez v. Morgan Jewelers of Salt Lake City, Inc.*, Compl. ¶ 42; *Fernandez v. Paksha, Inc.*, Compl. ¶ 42.

## V.     TITLE III OF THE ADA DOES NOT APPLY TO STAND ALONE WEBSITES

As demonstrated above, Plaintiff has no standing.  For this threshold reason, the FAC must be dismissed.  However, should the Court determine that Plaintiff has plausibly alleged an injury, Plaintiff's FAC should nonetheless be dismissed under Rule 12(b)(6) for failing to state a claim. As the Honorable Chief Judge Laura Taylor Swain and the Honorable Gregory H. Woods have recently held, a stand-alone website like Buffalo Jackson's is "not a place of public accommodation under Title III of the ADA." *Sookul v. Fresh Clean Threads*,  No. 1:23-cv-10164-GHW, 2024 WL 4499206, at *6; *Mejia v. High Brew Coffee Inc.*, 1:22-CV-03667-LTS, 2024 WL 4350912, at *3 (S.D.N.Y. Sept. 30, 2024); *see also Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021); *Martinez v. MyLife.com*, No. 21-cv-4779-BMC (E.D.N.Y. Nov. 1, 2021); *Suris v. Gannett Co.*, No. 20-CV-1793 (BMC), 2021 WL 2953218 (E.D.N.Y. July 14, 2021).

Because Plaintiff cannot possibly plead anything to cure the fact that, as a matter of law, he cannot state a legally cognizable claim under the ADA, leave to further amend should be denied. Additionally, because of the demonstrated futility of Plaintiff's claims, Buffalo Jackson respectfully requests that discovery be stayed pending the resolution of this motion.

## CONCLUSION

For the foregoing reasons, Buffalo Jackson requests that the Court dismiss the FAC with prejudice and without leave to amend and stay discovery pending resolution of this motion.

Dated: New York, New York
      October 21, 2024

<div style="margin-left:40%">

BLANK ROME LLP

By: */s/ Martin S. Krezalek*
Martin S. Krezalek
martin.krezalek@blankrome.com
1271 Avenue of the Americas
New York, New York 10020
Tel. (212) 885-5000

</div>

25

*Attorneys for Defendant Buffalo Jackson Trading Co., LLC*

26