## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FELIPE FERNANDEZ, | ) | |
| | ) | Case No.: 1:24-cv-04878-JPC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| BUFFALO JACKSON TRADING CO., LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**STEIN SAKS, PLLC**

*/s/Rami Salim*
Rami Salim, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND................................................................................................ 2

III.  STANDARD OF REVIEW ................................................................................................. 3

IV.   LEGAL ARGUMENT ......................................................................................................... 6

   A.   PLAINTIFF HAS ALLEGED SUFFICIENT FACTS IN THE FIRST AMENDED

   COMPLAINT TO CONFER ARTICLE III STANDING AND PERSONAL

   JURISDICTION.................................................................................................................. 6

     i.   Plaintiff Has Alleged Sufficient Facts Evincing Past Injury........................................... 6

     ii.  Plaintiff Has Established His Intent to Return to the Website. ....................................... 9

     iii. The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean

     He Has Not Demonstrated Article III Standing in this Case................................................ 11

   B.   PLAINTIFF'S NYCHRL CLAIMS SURVIVE AND PLAINTIFF IS ENTITLED TO

   PUNITIVE DAMAGES, CIVIL PENALTIES, AND FINES UNDER THE NYCHRL......... 13

   C.   WEBSITES ARE PUBLIC ACCOMMODATIONS UNDER THE ADA AND

   PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM WHICH ENTITLES HIM TO

   RELIEF. .............................................................................................................................. 15

V.    CONCLUSION ................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017) ........... 17, 18, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 5

*Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131 (E.D.N.Y. 2016) .................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 5

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) ........................... 3

*Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U) (Sup. Ct.) .................................. 13

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) ................ 9, 10, 11, 12

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .............................. 3, 4, 15

*Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816
(S.D.N.Y. Nov. 22, 2022) ............................................................................. 8, 10

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006) ..................................... 5

*Del-Orden v. Bonobos, Inc.*, 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) ...... 16, 18

*Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913
(S.D.N.Y. Aug. 14, 2023) ................................................................................. 8

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012). 5, 6

*Exchange Nat'l Bank of Chi. V. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976) .................... 4

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) ................................. 7

*Foster v. FEMA*, 128 F. Supp. 3d 717 (E.D.N.Y. 2015) ...................................... 5

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018) ...................... 4

*Heckler v. Mathews*, 465 U.S. 728 (1984) ......................................................... 7

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.
May 20, 2021) ................................................................................................. 8

*John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017) ....................................... 8

*Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114 (2d Cir. 2017) .................................... 3

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) ................................. 4

*Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar.
6, 2023) ......................................................................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................... 3

*Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July 5, 2023) ................................................................................................................. 10, 12

*Martinez v. Gutsy LLC*, No. 22-CV-409 (NGG) (RLM), 2022 U.S. Dist. LEXIS 214830 (E.D.N.Y. Nov. 29, 2022) .................................................................................... passim

*Mary Jo C. v. N.Y.S. & Local Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013) .......................................... 18

*Mejia v. High Brew Coffee, Inc.*, No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006 (S.D.N.Y. Sep. 30, 2024) ................................................................................................ 15

*Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) ..................... 16, 17, 18

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86 (2d Cir. 2010) ................................................................................................................................ 5

*Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141 (E.D.N.Y. 2017) ............................ 5

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ................................................................... 18

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ........................................................................ 18

*Pustilnik v. Battery Park City Auth.*, 71 Misc. 3d 1058 (Sup. Ct. 2021) ............................... 13, 14

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ............................................................................. 3

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................................. 3

*Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365 (S.D.N.Y. 2022) ................... 15

*Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76 (S.D.N.Y. 2022) .............. 8, 9, 12

*Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) ................................................................................... 4

*Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) .................................................................................. 8

*Williams v. MTA Bus Co.*, 44 F.4th 115 (2d Cir. 2022) .............................................................. 16

*Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244 (E.D.N.Y. July 17, 2012) .................................................................................................................................... 7

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) ...................................... 16, 17

## Statutes

42 U.S.C. § 12182 ......................................................................................................................... 1

N.Y.C. Admin. Code § 8-101 ........................................................................................................ 1

U.S. Const., Art. III, § 2 ................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1)...................................................................................... 3

Fed. R. Civ. P. 12(b)(6)...................................................................................... 5

**Other Authorities**

Dep't of Just., Guidance on Web Accessibility and the ADA (Mar. 18, 2022) ........................... 20

H.R. Rep. 101-485(II) (1990) ........................................................................... 18

Johanna Smith. & John Inazu, Virtual Access: A New Framework for Disability and Human
    Flourishing in an Online World, 21 Wis. L. Rev. 719 (2021) ................................................. 17

## I.    <u>INTRODUCTION</u>

Defendant Buffalo Jackson Trading Co., LLC, ("Buffalo Jackson" or "Defendant") moves under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Defendant argues that this Court lacks subject-matter jurisdiction because Plaintiff Felipe Fernandez ("Fernandez" or "Plaintiff") does not have Article III standing under the ADA, specifically alleging that Plaintiff has failed to plead adequate facts to support his allegations of an injury-in-fact, as well as his intent to return to the Website. Second, Defendant argues that this Court should dismiss Plaintiff's related state law claims brought under the NYCHRL. Third, Defendant moves this Court to either order jurisdictional discovery or hold an evidentiary hearing. Finally, Defendant asserts that Plaintiff has failed to state a claim because the ADA does not apply to standalone websites.

As will be discussed further below, this Court should deny Defendant's Motion to Dismiss in its entirety. First, this Court has subject-matter jurisdiction over this case because Plaintiff has satisfied the jurisdictional requirements of Article III by alleging (i) a particularized interest in the "Thompson Leather Moto Jacket" (the "Jacket"), a product for sale on Defendant's Website; (ii) the specific accessibility issues he encountered while attempting to navigate the Website; and (iii) a plausible and justifiable intent to return to the Website once the accessibility issues are remediated. For the same reasons, Plaintiff's state law claims should not be dismissed and neither jurisdictional discovery or an evidentiary hearing is necessary. Finally, many courts within this District maintain and have held that the ADA applies to websites like Defendant's and neither the Second Circuit nor the United States Supreme Court have definitively ruled on the issue.

## II.   <u>**FACTUAL BACKGROUND**</u>

Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. *See* First Amended Complaint ("FAC"), ¶ 2. For screen-reading software to function, the information on a website must be capable of being rendered into text. *Id*. at ¶ 35. If the website content is not capable of being rendered into text, a blind or visually-impaired user is unable to access the same content that is available to sighted users. *Id*. Defendant owns and operates the website, www.buffalojackson.com (the "Website"). *Id*. at ¶¶ 4, 39. The Website offers products and services for online sale and general delivery to the public. *Id.* at ¶ 40. Specifically, the Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about pricing, and avail consumers of the ability to peruse the numerous items offered for sale. *Id.*

Plaintiff wanted to purchase a leather motorcycle jacket and settled on Defendant's product, the Thompson Leather Moto Jacket. *Id.* at ¶ 40. Plaintiff wanted to purchase this particular Jacket because he was looking for a classically aesthetic motorcycle jacket that would be both comfortable and stylish and could suit any look. *Id.* at ¶ 43. Plaintiff then attempted multiple times prior to filing suit, most recently on April 15, 2024, to visit Defendant's website using his screen-reading software and to purchase the Jacket. *Id.* at ¶ 46. However, he encountered multiple barriers that have denied him the full and equal access to Defendant's online goods, content, and services. *Id*. at ¶¶ 46-53. Due to Defendant's failure to build the Website in a manner that is compatible with screen-reading programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the Lounge Set. *Id.* at ¶ 26. Contrary to Defendant's assertion otherwise, Plaintiff's Complaint specifically describes the ways in which the Website was incompatible with his screen-reading software. *Id.* at ¶¶ 47-52. Despite this direct

harm and frustration that Plaintiff has already suffered due to the inaccessibility of the Website, Plaintiff nevertheless intends to access the Website in the future if it is made accessible. *Id.* at ¶ 31.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert in a motion to dismiss that a plaintiff lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. U.S. Const., Art. III, § 2; *Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016). To assert federal subject-matter jurisdiction, a party must have Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). The United States Supreme Court has established that standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). When a plaintiff seeks injunctive relief, she must also prove that the identified injury in fact presents a "real and immediate threat of future injury" often termed a "likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

The Second Circuit draws a distinction between two types of Rule 12(b)(1) motions challenging federal subject-matter jurisdiction: facial challenges and fact-based challenges. *Carter,* 822 F.3d at 56-57; *see also Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 119 (2d Cir. 2017). A facial challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. Under a facial challenge, a plaintiff must "allege

facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id*. In order to make that determination, a court must accept the complaint's allegations as true "and draw all reasonable inferences in favor of the plaintiff." *Id.* at 57 (citation omitted). In a fact-based challenge, a defendant may proffer evidence beyond the pleadings. *Id.* at 55. To oppose a fact-based challenge to subject-matter jurisdiction, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" with respect to jurisdiction. *Id.* (quoting *Exchange Nat'l Bank of Chi. V. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). The threshold for Constitutional standing is appreciably lower on a 12(b)(1) motion than it is, for example, on a motion under 12(b)(6). *See Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing."); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). These are what are now known as the *Kreisler* factors. "To satisfy standing in ADA website cases

specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021) (citing cases).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to assert in a motion to dismiss that a plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). However, when reviewing a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The complaint must allege "a plausible set of facts sufficient to raise a right to relief above the speculative level." *Foster v. FEMA*, 128 F. Supp. 3d 717, 722 (E.D.N.Y. 2015) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)).

A claim is plausible on its face when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141, 146 (E.D.N.Y. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). This does not require a heightened pleading of factual specifics. *See Foster*, 128 F. Supp. 3d at 722 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a complaint that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement" will not suffice. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 161 (E.D.N.Y. 2012) (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (citation omitted).

IV. <u>LEGAL ARGUMENT</u>

A. **PLAINTIFF HAS ALLEGED SUFFICIENT FACTS IN THE FIRST AMENDED COMPLAINT TO CONFER ARTICLE III STANDING AND PERSONAL JURISDICTION.**

i. <u>Plaintiff Has Alleged Sufficient Facts Evincing Past Injury.</u>

Plaintiff has adequately alleged past injury, the first *Kreisler* factor, by alleging that on multiple prior occasions, while attempting to access the Website and purchase the Jacket, he "encountered [barriers that] have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website." FAC, ¶ 10. Those barriers included missing alternative text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, the requirement that some events be performed solely with a mouse, and a host of broken links which left Plaintiff unable to navigate or otherwise determine where he was on the Website. *Id.* at ¶¶ 47-48. More specifically, as alleged in the First Amended Complaint, Plaintiff faced the following barriers when interacting with Defendant's Website and the product page for the Jacket he wished to purchase:

- On the product page, when tabbing through active elements and links, they do not follow the same order as the page layout: left to right and top to bottom. *Id.* at ¶ 49.

- When attempting to add the product to the cart, Plaintiff opened a dialog and the focus order does not move from the trigger button to dialog items. *Id.* at ¶ 50.

- On the home page, moving content has no mechanism to pause or stop the movement. *Id.* at ¶ 51.

- When attempting to pay for the Jacket, the labels do not indicate whether or not form fields are mandatory. *Id.* at ¶ 52.

"These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do." *Id.* at ¶ 53.

Contrary to Defendant's assertion otherwise, Plaintiff *has* suffered harm by the very nature of discrimination itself. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017) ("If a barrier violating [the ADA] standards relates to a plaintiff's particular disability, it is understood to impair the plaintiff's full and equal access, which constitutes discrimination under the ADA [and] is considered to satisfy the 'injury-in-fact' element[.]"); *see also Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012) ("Being subjected to discrimination in violation of [the ADA's] provisions is itself an injury sufficient to confer Article III standing."); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("Discrimination itself, by perpetuating 'archaic and stereotypic' notions or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

These allegations are sufficient to survive a 12(b)(1) motion. *See Angeles*, 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff explained in a supplemental affidavit that "(1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Camacho,* 2019 U.S. Dist. LEXIS 209202, at *26 (past injury established where plaintiff alleged that the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading

software."); *Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022) (plaintiff adequately alleged past injury by identifying access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *6 (S.D.N.Y. Nov. 22, 2022) (allegations that plaintiff encountered various access barriers sufficient to establish past injury, including that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.").

Nor is it necessary to allege these barriers with any more detail given the low pleading threshold of Rule 8. *See John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 738 (2d Cir. 2017) ("We have repeatedly described [the injury-in-fact] requirement as a 'low threshold.'"); *see also Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913, at *7 (S.D.N.Y. Aug. 14, 2023) ("Further detail on which locations on the website are out of compliance with the applicable statutes is not necessary at this stage because a complaint need not provide 'detailed factual allegations' to survive a motion to dismiss."); *Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021) (concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury); *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022) (past injury established where plaintiff alleged that he encountered "certain difficulties" in navigating the website). Considering the "low threshold" of the injury-in-fact

requirement and the deterrence Plaintiff has experienced while using Defendant's Website, he has adequately alleged past injury under the ADA.

ii.    <u>**Plaintiff Has Established His Intent to Return to the Website.**</u>

Defendant relies heavily on the Second Circuit's holding in *Calcano v. Swarovski North America Ltd.* to establish that Plaintiff has not sufficiently evinced his intent to return to the Website once the accessibility barriers are remediated. 36 F.4th 68, 76 (2d Cir. 2022). Indeed, prior to *Calcano* and its immediate aftermath, courts consistently found Article III standing based on allegations establishing the basic facts of intent to return. *See Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano*, which "'fail[ed] to provide *any* details about [plaintiffs'] past visits,'" and finding that the amended complaint sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of [the product] that he finds attractive."); *see also Sanchez*, 2022 U.S. Dist. LEXIS 51247 at *5 (allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter [the plaintiff] from visiting the Website in the future, and that [the plaintiff] intends to visit the site again in the future when the barriers are cured" sufficient to establish intent to return to the website where the plaintiff additionally "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *Angeles*, 2021 U.S. Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients.").

Courts in this jurisdiction continue to find standing where the allegations, although perhaps not novel-length, nevertheless establish the factual basis for the plaintiff's interest in the website. *See Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7

(S.D.N.Y. Mar. 6, 2023) (finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (distinguishing *Calcano* and finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (distinguishing *Calcano* and finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023) (finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morrocan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Taken as a whole, Plaintiff's allegations persuasively explain why he is interested in returning to the Website to purchase the Jacket. He wanted a high-quality, classic leather motorcycle jacket – exactly what Defendant provides via its Website. As the Second Circuit explained in *Calcano*, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the "totality of all relevant facts,"' "the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75

(citations omitted). Thus, the question is not whether particular paragraphs plead the magic words "I intend to return," but whether, taken as a whole, Plaintiff's interest in returning to the Website is a plausible one.  Given the circumstances behind Plaintiff's interest in clothing sets for his child, the answer is an obvious "yes."

### iii.    The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean He Has Not Demonstrated Article III Standing in this Case.

Defendant argues that *Calcano* all but forecloses Plaintiff's claims because, as a serial litigant, Plaintiff does not have any real interest in the websites he has sued, but is only interested in exacting compliance with the ADA. But *Calcano* is easily distinguishable from the facts of this case. In that case, the Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing. *Id.* at 76-77.

Defendant points to no error in the First Amended Complaint, or any of the other ADA claims Plaintiff has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist, they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in *Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff firms, whether they bring personal injury claims or intellectual property claims such as copyright infringement – Defendant has failed to point to any other aspect of *Calcano* that would

11

call into question the veracity of Plaintiff's allegations. Whatever may be said for Plaintiff's status as a serial litigator – asserted on the basis that Plaintiff has filed other ADA claims, the very notion of which seems faintly absurd – none of the other troubling aspects of *Calcano* are present here.

Courts in this jurisdiction have recognized these distinctions in finding standing. *See Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions'" of intent to return to [d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning intent to return are significantly more detailed[.]"); *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants."). *Calcano* does not stand for the broader, completely untethered proposition that any ADA complaint, no matter the allegations or the detail provided, must be summarily dismissed if it is contemporaneous with other ADA complaints of a similar nature or based on a similarly-worded complaint. As the Second Circuit noted, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the "totality of all relevant facts,'" the plaintiff *plausibly* alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (emphasis added). Considering the totality of facts alleged in the First Amended Complaint, Plaintiff has met that burden here.

Simply put, Defendant's reliance on Plaintiff's status as a "serial litigator" is not persuasive. The fact that singular plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually-impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, 2023 U.S. Dist. LEXIS 115503 at *15-16 (rejecting the defendant's arguments that filing over 70 complaints made the plaintiff's allegations of intent to return

implausible and reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at *10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites."). Defendant's attempts to twist this basic reality into something other than what it is reflects a profound ignorance of the access barriers that the visually impaired encounter on a daily basis.

### B. PLAINTIFF'S NYCHRL CLAIMS SURVIVE AND PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES, CIVIL PENALTIES, AND FINES UNDER THE NYCHRL.

Even if Plaintiff's ADA claims are dismissed, Plaintiff's NYCHRL claims are judged by a different standard and survive. The Supreme Court of New York came to the same conclusion:

> It is undisputed that the NYCHRL's pleading standards are materially looser than the trans-substantive plausibility standard of the Federal Rules of Civil Procedure— or, for that matter, the CPLR's notice-pleading standard for claims under the NYSHRL. (*See Williams v New York City Hous. Auth.*, 61 AD3d 62, 65-69, 872 N.Y.S.2d 27 [1st Dept 2009]; *Vig v NY Hairspray Co., L.P.*, 67 AD3d 140, 145, 885 N.Y.S.2d 74 [1st Dept 2009].) As a result, allegations that would be insufficient to state a federal claim might well be enough to state a cause of action under the NYCHRL. This difference defeats defendants' estoppel argument.

*Pustilnik v. Battery Park City Auth.*, 71 Misc. 3d 1058, 1069 (Sup. Ct. 2021); *see also Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U), at *6-7 (Sup. Ct.) ("However, it bears noting that contrary to defendants' assertion, New York State courts, even after the decision in *Ashcroft*, have

consistently applied the standards promulgated by New York State case law when confronted with a motion seeking to dismiss a cause of action pursuant to 42 USC § 1983, on grounds that the complaint fails to state a cause of action.").

In considering whether to reject the plaintiff's NYCHRL claims on grounds of collateral estoppel after the plaintiff's ADA claims had been dismissed at the federal level, *Pustilnik* noted,

> The First Department has been careful to emphasize in this context that estoppel will apply only where the federal court was deciding "strictly factual question[s] not involving application of law to facts or the expression of an ultimate legal conclusion," because these factual determinations do "not implicate any of the several ways" in which analysis of NYCHRL claims is "not identical to their federal and state counterparts."

*Pustilnik*, 71 Misc. 3d at 1069-70.

The court further noted that the federal court's 12(b)(6) dismissal was a legal determination regarding the sufficiency of the allegations that spoke more to the difference in the two pleading standards than it did to factual determinations by the court. *Id.* at 1070. The court explained, "The district court held that Pustilnik's allegations did not plausibly raise the necessary inference of discrimination." *Id.* "That holding does not resolve a strictly factual question. Rather, it is grounded in the threshold set by federal law for when plaintiffs' allegations should entitle them to proceed past the pleading stage and obtain discovery from defendants." *Id.* "The CPLR and the NYCHRL, on the other hand, set a different, lower threshold." *Id.* The court therefore concluded that "the federal court's dismissal of Pustilnik's age-discrimination and disability-discrimination claims brought under federal law does not estop Pustilnik from relying on the same allegations to assert discrimination claims under the NYCHRL." *Id.*

This Court should follow this decisional caselaw. The CPLR and NYCHRL set a different, lower pleading threshold than does the FCRP. Dismissal of Plaintiff's ADA claims at the federal level does not resolve any factual questions, but speaks more to the difference in those two

standards. Thus, Plaintiff's NYCHRL claims survive even with the dismissal of his ADA claims. Moreover, any dismissal under 12(b)(1) is necessarily without prejudice, preserving his NYCHRL claims for state court. *See Carter*, 822 F.3d at 54.

### C. WEBSITES ARE PUBLIC ACCOMMODATIONS UNDER THE ADA AND PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM WHICH ENTITLES HIM TO RELIEF.

Defendant alternatively argues that Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because one court within this district has recently held that a standalone website is not a "place of public accommodation" within the meaning of the ADA. *See Mejia v. High Brew Coffee, Inc.*, No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006, at *17 (S.D.N.Y. Sep. 30, 2024). However, other courts within this district reached the exact opposite conclusion. *See Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 369 (S.D.N.Y. 2022) (holding that a retail website "falls within the meaning of a 'place of public accommodation' as defined in Title III of the ADA, regardless of its connection *vel non* to a physical space."). Further, neither the Second Circuit Court of Appeals nor the United States Supreme Court have definitively ruled on the issue. This Court is not bound by *Mejia* or *Moo Organic Chocolates*. Rather, this Court must engage in its own statutory interpretation of the ADA. For the reasons that follow, this Court should conclude that a Website like Defendant's is a "public accommodation" within the meaning of the ADA.

The issue of whether the Website is a place of public accommodation is a legal issue that has not yet been settled by the Second Circuit and thus must be settled by this Court as a matter of law. *See e.g. Martinez v. Gutsy LLC*, No. 22-CV-409 (NGG) (RLM), 2022 U.S. Dist. LEXIS 214830, at *5, *8 (E.D.N.Y. Nov. 29, 2022) (noting that whether the ADA applies to standalone websites is an "unresolved legal question" that "is a matter of pure statutory construction."). The

only facts that matter, as Defendant apparently concedes, is the fact of the Website and the lack of any physical store location connected with it. This *legal question* must be decided with reference to relevant case law, and that case law has resoundingly answered in the affirmative. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *7 ("The vast majority of courts in this circuit have taken the [] position[] that commercial websites qualify as places of public accommodation independent of a nexus to a physical space.").

Reasoning that the statute is ambiguous as to whether a "place of public accommodation," as defined under 42 U.S.C. § 12181(7), necessarily requires a physical storefront, courts have turned to standard "canons and other interpretive tools to understand the statute in question." *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *9 (citing *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022)). All but ignoring this analysis, Defendant presumes that the statute is clear on its face and the required nexus a foregone conclusion. But as *Martinez* and others have recognized, "[s]ome of the entities listed as public accommodations in § 12181(7)(E) and (F) are not *necessarily*, or even *predominantly*, brick-and-mortar places of commerce," citing travel agencies, which conducted business by phone or email in 1990 when the statute was passed, as one important example. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *10 (emphasis in original); *see also Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 568-71 (D. Vt. 2015); *see also Del-Orden v. Bonobos, Inc.*, 2017 U.S. Dist. LEXIS 209251, at *19-22 (S.D.N.Y. Dec. 20, 2017). Others have reasoned that the term "other sales or rental establishment," read in today's context, could easily include cyber-commerce. *Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *21-22.

Turning to the tools of statutory construction to resolve this ambiguity, these courts have found that § 12181(7) does not require a physical location. *Martinez*, for example, rejected the argument, advanced by *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) and

others, *see e.g. Winegard*, 556 F.Supp.3d at 178, that the doctrine of *ejusdem generis* compels the conclusion that the residual clauses appearing in the list of examples in § 12181(7) are necessarily limited to physical structures. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *11-12. Calling the argument "flawed," *Martinez* reasoned that the list of examples provided in § 12181(7) could very well refer to the *functions* of various retail establishments, and not just the physical places themselves. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *11-13 (citing Johanna Smith. & John Inazu, Virtual Access: A New Framework for Disability and Human Flourishing in an Online World, 21 Wis. L. Rev. 719, 766 (2021)). Read in that light, the doctrine of *ejusdem generis* compels a much broader reading of § 12181(7). *See Id.* at *12-13.

Turning to the statute at large, these courts have reasoned that use of the term "place" was merely a term of convenience for Congress, rather than a substantive limitation on a "place of public accommodation," because the term "place" is used interchangeably with "establishment" in the list of examples under § 12181(7). *See Scribd*, 97 F. Supp. 3d at 572; *see also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 399-400 (E.D.N.Y. 2017). Moreover, these courts have noted that when it wanted to, Congress was perfectly capable of reflecting a physical-location-based limitation on a definition, as it did with the definition of "facilities" in 42 U.S.C. § 12183, which "details what physical modifications to 'facilities' are required under the law." *Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14; *see also Blick Art Materials*, 268 F. Supp. 3d at 394-95 (additionally noting that the term "facility" is used in 42 U.S.C. § 12182(a)). Relying on the "fundamental canon[s] of construction" "that identical words used in different parts of the same act are intended to have the same meaning," and "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," these courts reason that Congress's failure to use the term "facility" in § 12181(7) was a deliberate omission designed to

17

enlarge places of public accommodation beyond mere physical locations. *See Blick Art Materials*, 268 F. Supp. 3d at 395 ("The Act could have easily cabined the prohibition on discrimination to the goods, services, etc. of a 'facility' of a 'place of public accommodation,' or used the word 'facility' instead of 'place,' but it did not."); *see also Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14 (finding that "change in word choice - from 'public accommodations' to 'facilities' - when intending to discuss a physical space, further bolsters a textual interpretation of § 12181 … as having been concerned with entities' functions rather than their physical spaces.").

Turning to the legislative history, one of other stalwart tools of statutory construction, courts have almost uniformly noted the broad remedial purpose of the ADA and Congress's goals of having the ADA keep pace with rapid technological developments in society. *See Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *23-24; *see also Scribd*, 97 F. Supp. 3d at 573-74 ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities … should keep pace with the rapidly changing technology of the times.") (quoting H.R. Rep. 101-485(II), at 108 (1990)); *see also Martinez*, 2022 U.S. Dist. LEXIS 214830 at *16-17 ("To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life.") (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)).

A narrow reading of "public accommodation" would frustrate Congress's purpose. *See Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *24-25 (citing *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet[.]'") (quoting *Mary Jo C. v. N.Y.S. & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013) ("Limiting Title III's scope to brick-and-mortar venues" would "'render [Title III] effectively impotent' in broad swaths of social and economic

life, 'which would be contrary to the broad remedial purpose of the ADA—an act that "has been described as a milestone on the path to a more decent, tolerant, progressive society."'").

Noting the substantial public policy issues at stake, these courts have further noted the expansive and sweeping technological developments that have happened in society over the last several decades. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14-15 ("In the more than three decades since the landmark passage of the ADA, the internet has taken on a far greater role in the lives of Americans than the ADA's drafters could ever have imagined."); *see also Blick Art Materials*, 268 F. Supp. 3d at 398 ("Today, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home."). *Martinez* was particularly eloquent in describing the increasing encroachment of the internet on the daily lives of Americans during the critical period of the pandemic when the public was largely limited to their household, and even afterward as many Americans continue to express a reluctance to participate in public gatherings. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14-16.

Therefore, excluding the ADA from these technological developments would hamstring an important statute in American life. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *15-16 ("As an ever-greater proportion of the activities of everyday life and its myriad commercial transactions begin to take place online, a reading of the statute that limits its effect to entities transacting commerce in-person becomes one that renders the statute increasingly meaningless."); *see also Blick Art Materials*, 268 F. Supp. 3d at 398 ("It would be a cruel irony to adopt the interpretation of the ADA espoused by Blick, which would render the legislation intended to emancipate the disabled from the bonds of isolation and segregation obsolete when its objective is increasingly within reach.").

Interpreting the ADA in this fashion would also lead to "absurd results," one of the basic no-no's of statutory interpretation. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *16 ("A core maxim of statutory interpretation, the presumption against absurdity, tells us never to ascribe an absurd meaning to Congress."). Moreover, interpreting the ADA so narrowly would lead to the absurd result that a vendor would be precluded from discriminating at its physical location, but could freely do so online. *See Blick Art Materials*, 268 F. Supp. 3d at 396-97.

If these statutory tools were not enough, courts have also recognized that the U.S. Department of Justice, tasked by Congress with interpreting the ADA, has taken the position that the ADA applies to websites without a nexus to a physical location. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *18-20 (citing Dep't of Just., Guidance on Web Accessibility and the ADA (Mar. 18, 2022)). This interpretation is entitled to *Skidmore* deference which the *Martinez* court found persuasive. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *18-20.

For these reasons, this Court should hold that § 12181(7) applies to standalone websites and that Plaintiff has adequately stated a claim which entitles him to relief under the ADA.

## V.    **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety. Plaintiff has shown standing and, as such, this Court should retain supplemental jurisdiction over Plaintiff's state law claims. Furthermore, Plaintiff requests leave to further amend his Complaint on any factual issues.

Dated: November 18, 2024

Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/Rami Salim*_____
Rami Salim, Esq.
One University Plaza Drive, Suite 620
Hackensack, New Jersey 07601
Phone: 201-282-6500
Fax: 202-282-6501
rsalim@steinsakslegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2024, I electronically served the foregoing served this day on all counsel either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Rami Salim*
Rami Salim, Esq.